**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Charles William McDOWELL, Defendant–Appellant.**

**No. 07CA1358.**

Colorado Court of Appeals, Div. II.

March 5, 2009.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, Jonathan P. Fero, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kathy Goudy, Carbondale, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Charles William McDowell, appeals the order denying his Crim. P. 35(c) postconviction motion. He contends that the postconviction court erred when, after concluding that the evidence raised a presumption that he was improperly subjected to an interrogation style held unconstitutional in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), it denied relief on his outrageous governmental conduct claim because it concluded that *Seibert* was not retroactively applicable to his case. He also asserts that the court erred in denying a hearing on his ineffective assistance of counsel claim. We conclude that defendant's outrageous governmental conduct claim is procedurally barred, that *Seibert* is not retroactively applicable to this case, and that his allegations of ineffective assistance are refuted by the record. Accordingly, we affirm.

The facts surrounding defendant's confession to the 1998 murder of his wife are undisputed. Within forty-eight hours of his wife's death, he agreed to meet and speak with law enforcement officials at a local hotel. The initial interview, conducted by a Colorado Bureau of Investigation agent and an investigator from the district attorney's office, began at approximately 4:30 p.m. and continued for nearly five hours. Defendant, who participated without counsel, did not receive warnings under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), during this interview. He made several potentially inculpatory statements, but did not confess.

A second interview began at around 9:45 p.m. Defendant then agreed to take two polygraph tests, both of which he failed. The local police chief, a personal acquaintance of defendant, then began additional questioning. After informing defendant that he had failed the polygraphs, the chief told defendant that further discussions would occur "only after *Miranda* and only if he agreed to waive his rights." At 11:30 p.m., another officer advised defendant of his *Miranda* rights, after which defendant waived his rights and confessed to killing his wife. He was then taken to jail, where he attempted to commit suicide. Two suicide notes were recovered, both of which included confessions.

Defendant moved to suppress all the statements he had made. Finding that defendant was in custody at the hotel and that he had been subjected to custodial interrogation, the trial court suppressed statements defendant

made before the administration of the *Miranda* warnings. However, after concluding that defendant had validly waived his *Miranda* rights, the court found that all his statements were voluntary and held admissible those he made after the warnings had been given.

Following trial, the jury convicted defendant of first degree murder, felony murder, aggravated robbery, and theft. The trial court sentenced defendant to life in prison without parole.

On direct appeal, defendant asserted, as relevant here, that his statements were not voluntary, his *Miranda* waiver was not valid, and the post-waiver confession was the fruit of the initial statements obtained in violation of *Miranda*. In an unpublished opinion, a division of this court affirmed the trial court's judgment. *People v. McDowell*, 2002 WL 1764441 (Colo.App. No. 00CA0149, Jan. 17, 2002) (not published pursuant to C.A.R. 35(f)) *(McDowell I)*. The supreme court denied certiorari.

In 2006, defendant filed the postconviction motion at issue here, asserting that he had been subjected to a blatant violation of his constitutional rights by outrageous governmental conduct and ineffective assistance of counsel. The postconviction court determined that, although a defendant may not generally relitigate matters fully and finally resolved in an earlier appeal, Crim. P. 35(c) and *People v. Close*, 22 P.3d 933, 936 (Colo. App.2000), *aff'd*, 48 P.3d 528 (Colo.2002), provide a narrow exception to that rule when a defendant asserts a "significant change in the interpretation of the law, of constitutional magnitude, determined since a defendant's direct appeal was affirmed" by a "court whose decisions are binding." *See* Crim. P. 35(c)(3)(VI)(b) (court shall deny any postconviction claim that was raised and resolved in a prior appeal except a claim based on a new rule of constitutional law previously unavailable, if that rule has been applied retroactively by the United States Supreme Court or Colorado appellate courts); Crim. P. 35(c)(3)(VII)(c) (court shall deny any postconviction claim that could have been presented in an appeal previously brought, except for any claim based on a new rule of constitu-

tional law previously unavailable, if that rule should be applied retroactively to cases on collateral review).

The court noted defendant had alleged that in *Seibert*, a case decided nearly two years after his conviction became final, the Supreme Court had declared unconstitutional the so-called "two-step" interview strategy. The court addressed the applicability of *Seibert* and determined that the allegations in defendant's motion raised an initial presumption that the administration of *Miranda* warnings was insufficient to remove the taint of the prewarning phases of the interrogation. It then addressed whether *Seibert* applied retroactively, concluded that it did not, and determined that defendant's allegations of ineffective assistance of counsel were refuted by the record. It did not directly review defendant's claim of outrageous governmental conduct. This appeal followed.

## I. Is Defendant's Claim Barred?

■ Defendant asserts that the postconviction court erred in denying relief on his outrageous governmental conduct claim once it concluded that the evidence raised a presumption that he was improperly subjected to an interrogation style held unconstitutional under *Seibert*. The People assert that defendant's outrageous governmental conduct claim is procedurally barred. We agree with the People.

■ Crim. P. 35 proceedings are intended to prevent injustices after conviction and sentencing, not to provide perpetual review. *People v. Hampton*, 187 Colo. 131, 133, 528 P.2d 1311, 1312 (1974). A defendant cannot use a Crim. P. 35 proceeding to relitigate matters that were fully and finally resolved in an earlier appeal. *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo.1996).

■ In addition to matters that were actually resolved, "an argument raised under Rule 35 which does not precisely duplicate an issue raised on appeal will be precluded if its review 'would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory.'" *Id.* (quoting *People v. Bastardo*, 646 P.2d 382, 383 (Colo.1982)); *see People v. Versteeg*,

165 P.3d 760, 764 (Colo.App.2006) (a defendant may not use Crim. P. 35(c) to relitigate an issue resolved on direct appeal unless he shows the claim fits within certain exceptions).

Defendant asserts that he suffered a violation of his constitutional rights by the outrageous governmental conduct of law enforcement officers and the district attorney's office. We must therefore determine whether this claim involves an issue previously resolved on direct appeal.

■ Outrageous governmental conduct was first recognized as a defense in this state in *Bailey v. People*, 630 P.2d 1062, 1068 (Colo.1981). To successfully assert this defense, a defendant must show that his constitutional due process rights have been violated by the actions of government officials to such a degree as to violate fundamental fairness and shock the universal sense of justice. *People v. Vega*, 870 P.2d 549, 553 (Colo.App. 1993), *aff'd*, 893 P.2d 107 (Colo.1995); *People v. Aponte*, 867 P.2d 183, 185 (Colo.App.1993).

■ When the claim is appropriately raised, a trial court must determine if there has been outrageous government conduct by reviewing the totality of the facts in a given case. *People in Interest of M.N.*, 761 P.2d 1124, 1129 (Colo.1988). This determination lies within the trial court's discretion and will not be overturned on appeal absent an abuse of that discretion. *People v. Medina*, 51 P.3d 1006, 1011 (Colo.App.2001), *aff'd sub nom. Mata–Medina v. People*, 71 P.3d 973 (Colo. 2003).

Here, defendant asserted in his motion that the police and the district attorney's office had engaged in "outrageous governmental conduct [that] led to the obtaining of statements in a conscious decision to withhold *Miranda* warnings, to question first, then give the warnings, and then repeat the questions." We conclude that defendant's interrogation and confession have already been examined and his claims for suppression have been rejected by the trial court and likewise reviewed with the same result on direct appeal. We further conclude that defendant's current claim involves the issue previously resolved on direct appeal.

Although couched as an outrageous conduct claim, defendant's essential argument is that his confession was coerced and involuntary. His assertion thus duplicates the issue raised on direct appeal that his statements were involuntary under the principles outlined in *People v. Gennings*, 808 P.2d 839, 844 (Colo.1991), and were inadmissible under *Miranda*.

We find further support for this conclusion when we examine the essential underpinnings of the outrageous governmental conduct claim and compare those with the principles underlying *Miranda*. Outrageous governmental conduct involves conduct by government agents that violates fundamental fairness and shocks the universal sense of justice. The claim is based on due process of law. *Medina*, 51 P.3d at 1012.

Before *Miranda* was decided, state law excluding involuntary confessions was predicated on the Due Process Clause of the Fourteenth Amendment. *See Seibert*, 542 U.S. at 607, 124 S.Ct. 2601. *Miranda*, while predicated upon the Fifth Amendment privilege not to incriminate oneself, unified the Fifth and Fourteenth Amendment voluntariness tests through principles of due process. *Id.*

■ Accordingly, when, as here, an outrageous governmental conduct claim is predicated upon police interrogation practices, the law and policies that require suppression of involuntary and unwarned statements are very similar, if not identical, to the law and policies that guide trial courts in determining whether such conduct constitutes outrageous governmental conduct that requires dismissal of the entire case. *See Medina*, 51 P.3d at 1012 (while police officers acted improperly by failing to advise defendant of his *Miranda* rights, failing to determine whether he understood his right to counsel, continuing to interrogate him after he had invoked his right to counsel, failing to determine whether he was represented by counsel before interviewing him, and engaging in coercive police conduct by making promises and threats to him, the proper remedy was not dismissal of the case, but, instead, suppression of the statements).

Because defendant's argument duplicates issues raised and addressed in his previous appeal, we conclude that review of his outrageous governmental conduct claim would be nothing more than a second appeal addressing the same issues. Therefore, this claim is procedurally barred. *See Rodriguez,* 914 P.2d at 249.

## II. Does an Exception to the Bar Apply?

■ There is, however, a narrow exception to the procedural bar that applies when a defendant alleges a significant change in the interpretation of constitutional law. Crim. P. 35(c)(3)(VII) provides that a court shall not procedurally deny a claim based on a new rule of constitutional law previously unavailable if that rule should be applied retroactively to cases on collateral review. *See Close,* 22 P.3d at 936. Accordingly, we now examine *Seibert's* potential application to this case. In doing so, because there is no attack upon the postconviction court's conclusion that the evidence raised a presumption that defendant was subjected to an unconstitutional two-step interrogation, we will assume, without deciding, that the evidence supports that determination.

### A. *Seibert* Holding

In *Seibert,* the Court reviewed an interrogation strategy during which police officers gave no *Miranda* warnings to a suspect in custody until questioning had produced a confession. Following that confession, officers administered *Miranda* warnings and then led the suspect to cover the same factual ground for a second time. A majority of the Supreme Court held that when *Miranda* warnings are deliberately withheld during an interrogation until the defendant makes an inculpatory statement, that forecloses the admissibility at trial of an inculpatory statement made after the *Miranda* warnings are administered, unless curative measures are taken to ensure that the full import of *Miranda* is communicated to the defendant. The Court established various factors to be used in determining whether *Miranda* warnings provided in the middle of an interrogation could be effective.

### B. Is *Seibert* Retroactive?

The United States Supreme Court has held that new constitutional rules of criminal procedure generally do not apply to cases that became final, as defendant's case did, before the new rule was announced. *Schriro v. Summerlin,* 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). There is a narrow exception to this general rule for "watershed rules of criminal procedure." *Summerlin,* 542 U.S. at 352, 124 S.Ct. 2519; *Teague,* 489 U.S. at 311, 109 S.Ct. 1060. The Colorado Supreme Court has adopted the *Teague* analysis for determining whether a new constitutional rule of criminal procedure applies to cases on collateral review. *Edwards v. People,* 129 P.3d 977, 983 (Colo.2006); *see People v. Johnson,* 142 P.3d 722, 724 (Colo.2006).

We must first determine whether *Seibert* creates a constitutional rule that is substantive or procedural, because new substantive rules generally apply to cases on direct and collateral review, while new procedural rules apply more narrowly. *Johnson,* 142 P.3d at 724.

### 1. *Seibert* Announced a New Procedural Rule

The postconviction court concluded that (1) *Seibert* has the characteristics of a new rule of criminal procedure because it alters the admissibility of certain evidence at trial; and (2) *Seibert* announced a new rule because it represented a departure from existing precedent. We agree that *Seibert* is a procedural rule because, if applicable here, defendant's post-*Miranda* statements, including his confession, would no longer be admissible at trial. *See Johnson,* 142 P.3d at 725 (stating that procedural rules regulate only the manner in which criminal conduct is to be proved).

We further agree that *Seibert* can properly be characterized as a "new rule" because it squarely addresses and holds unconstitutional the "two-step *Miranda*" procedure previously utilized by law enforcement officers throughout the United States, unless appropriate curative measures are taken to ensure that the defendant is aware of the full import

of *Miranda.* *See Seibert,* 542 U.S. at 609, 124 S.Ct. 2601 (discussing the frequency of the two-step interrogation practice based on officer testimony and national police training manuals). While *Seibert* does not overrule the United States Supreme Court's analysis in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), it narrows the applicability of *Elstad* to situations where law enforcement officers inadvertently fail to administer *Miranda* warnings at the beginning of a custodial interrogation. *See also People v. Mendoza–Rodriguez,* 790 P.2d 810, 813 (Colo.1990) (discussing whether statements made during interrogation before *Miranda* warnings automatically render subsequent voluntary, post-*Miranda* statements inadmissible and relying on *Elstad* ).

Accordingly, the rule announced in *Seibert* was not dictated by then existing precedent, which makes it a new rule for purposes of retroactivity analysis. *See Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004); *Edwards,* 129 P.3d at 983.

### 2. *Seibert* Is Not a Watershed Rule of Criminal Procedure

▪▪▪ If a new procedural rule constitutes a watershed rule of criminal procedure, it will be applied retroactively. *Johnson,* 142 P.3d at 724. To be considered watershed, a rule must meet two criteria: "(1) '[i]nfringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction'; and (2) 'the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" *Edwards,* 129 P.3d at 979 (quoting *Tyler v. Cain,* 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001)).

The postconviction court concluded that *Seibert* did not announce a watershed rule of criminal procedure. In doing so it noted that, to date, the United States Supreme Court has only identified one watershed rule of criminal procedure, that being the right to counsel announced in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

We agree with the postconviction court's analysis. *Seibert* broadens the applicability of *Miranda* to what was then a common interrogation technique, thought to be valid. However, *Seibert* does not implicate the fundamental fairness and accuracy of the proceeding in the same manner as *Gideon* did by providing indigent defendants with the right to counsel. In fact, as the postconviction court aptly noted, by foreclosing otherwise admissible evidence, it may diminish the fact finding process, thereby potentially negatively affecting the accuracy of the proceeding. *See Mungo v. Duncan,* 393 F.3d 327, 335 (2d Cir.2004) (in determining that *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), was not retroactive, court noted that the new rule would deprive juries of highly reliable evidence of guilt). Accordingly, we conclude that *Seibert* is not retroactively applicable to defendant's final conviction. *See Bennet v. Terhune,* 265 Fed.Appx. 490, 492–93, 2008 WL 205301 (9th Cir.2008) (not published) *(Seibert* does not constitute a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding, and therefore cannot be applied retroactively to cases on collateral review).

Defendant's reliance on *Danforth v. Minnesota,* 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), for a different result is misplaced. There, the United States Supreme Court held that its retroactivity analysis for new rules of criminal procedure is not binding on states, and that states may provide broader relief in their own postconviction proceedings. 552 U.S. at ——, 128 S.Ct. at 1033. However, the Colorado Supreme Court has explicitly adopted the *Teague* standard, explaining that it would adopt it even if not required to do so. *Edwards,* 129 P.3d at 982–83.

### C. Application

Here, because *Seibert* is the sole basis under which admissibility of defendant's interrogation and confession could be reconsidered, and because *Seibert* is not retroactive, the postconviction court correctly concluded that the issue had been fully resolved on direct appeal for purposes of the Crim. P. 35(c) proceeding and dismissed the motion without a hearing on this issue. *See People*

v. Long, 126 P.3d 284, 286 (Colo.App.2005) (whether a postconviction motion states a claim for relief is a legal determination subject to de novo review); People v. Venzor, 121 P.3d 260, 262 (Colo.App.2005) (denial of a postconviction motion without a hearing is appropriate if the claims raise an issue of law, or if the allegations asserted, even if true, do not provide a basis for relief).

### III. Ineffective Assistance of Counsel

Defendant asserts that the postconviction court erred by denying a hearing on his Crim. P. 35(c) motion because it appropriately presented three factual assertions that, if true, demonstrated he received ineffective assistance of counsel. We do not agree.

To prevail in a proceeding for postconviction relief based on a claim of ineffective assistance of counsel, the defendant must demonstrate not only that counsel's performance was deficient, but also that it prejudiced the defense. People v. Zuniga, 80 P.3d 965, 972–73 (Colo.App.2003).

■■■ Because a presumption of validity attaches to a judgment of conviction, the burden is on the defendant to prove both elements by a preponderance of the evidence. People v. Naranjo, 840 P.2d 319, 325 (Colo. 1992).

To satisfy the second requirement of this test, a defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Mere disagreement as to trial strategy will not support an ineffective assistance of counsel claim. People v. Bossert, 722 P.2d 998, 1010 (Colo.1986).

"Because relief for ineffective assistance of counsel requires a criminal defendant to prove both deficient representation and prejudice, denial of the motion without a hearing is justified, if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the Strickland test." Ardolino v. People, 69 P.3d 73, 77 (Colo.2003); see Crim. P. 35(c)(3)(IV).

### A. Outrageous Governmental Conduct

■■■ Defendant asserts that his trial counsel was ineffective for failing to raise outrageous governmental conduct as a defense. The opening brief states, "What was not argued to the trial court was the issue of [defendant's] confession being involuntary due to the collusion of law enforcement and the district attorney's office to ignore [defendant's] constitutional rights."

However, the record reveals that defendant's trial attorneys moved to suppress his confession as well as his pre- and post-Miranda waiver statements. At the suppression hearing, counsel argued:

I think there was an element of police coercion and involuntariness that would make this [confession] involuntary here, and the act of police coercion, Your Honor, it's not rubber hoses, it's not threats I'll do something to your family. It's seven hours of an un-Mirandized interrogation planned in advance, carried out by experts, which makes this waiver, in my opinion, not a free voluntary act by Mr. McDowell, and furthermore makes the entire statement not a voluntary statement.

We conclude that counsel's asserted failure to raise outrageous governmental conduct does not constitute deficient representation. To warrant dismissal, such conduct must be more egregious than the conduct asserted here. See Medina, 51 P.3d at 1012 (dismissal not warranted where police officers had acted improperly by failing to advise defendant of his Miranda rights; failing to determine whether he understood his right to counsel; continuing to interrogate defendant after he had invoked his right to counsel; failing to determine whether he was represented by counsel before interviewing him; and engaging in coercive police conduct by making promises and threats to defendant; instead, suppression of defendant's statements to the police was the proper remedy). Indeed, the conduct at issue here yielded an admissible statement following Miranda warnings and was specifically condoned by the law in effect at the time of defendant's arrest. See McDowell I (identifying Elstad as the governing law and applying it to defendant's case).

**340**

For the same reason, defendant could not have been prejudiced. Such a defense, if raised, would not have properly succeeded. Reviewing defendant's interrogation and confession at the suppression hearing, the trial court found all his statements to be voluntary. Thus, there is no indication that an outrageous governmental conduct defense would have been viable. *See People in Interest of M.N.*, 761 P.2d at 1129–30 (reversing trial court's dismissal, on outrageous conduct grounds, because undercover officer's action in convincing minor to steal tires and obtain marijuana for him were not so offensive as to shock the universal sense of justice); *People in Interest of J.A.L.*, 761 P.2d 1137, 1139 (Colo.1988) (same).

### B. Crime of Passion Defense

Defendant asserts that counsel did not adequately present a crime of passion defense. He avers that the tendered crime of passion instruction was rejected by the trial court and then not pursued.

The postconviction court rejected these contentions because the record showed that the jury was provided with an instruction on second degree murder-heat of passion, though not the one defendant originally submitted. The court reasoned that the fact that the jury was provided with a heat of passion instruction would imply that defense counsel presented sufficient evidence during trial to support the instruction. The court also noted that a division of this court had already rejected defendant's argument that the jury was improperly instructed on the definition of provocation. *See McDowell I.*

We agree with the postconviction court. The record squarely refutes defendant's contention. Moreover, defendant's Crim. P. 35(c) motion does not allege any facts to indicate that defense counsel failed to introduce other evidence to buttress this defense.

### C. Insanity Plea

Defendant contends that trial counsel was ineffective because he failed to enter a plea of not guilty by reason of insanity. Defendant argues that this defense should have been raised because of his erratic behavior the night of his arrest and his post-arrest suicide attempts.

The record, however, reveals that the decision not to enter a plea of insanity was strategic and therefore not ineffective. *See Ardolino*, 69 P.3d at 76. Defendant's trial counsel directly addressed the issue of an insanity plea, stating he was concerned that if he raised the defense, defendant's silence or any self-incriminating statements made during the requisite mental examination could be used against him. As part of his argument, trial counsel specifically informed the trial court that he would advise defendant to enter an insanity plea if his silence would not be used against him. Because the trial court could not give that assurance, counsel did not advise defendant to enter that plea.

Because defendant's assertions of ineffective assistance are directly refuted by the record, the postconviction court did not err in failing to grant a hearing. *See id.*

The order is affirmed.

Judge ROY and Judge CONNELLY concur.