22CA0338 Peo v Carbajal 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0338
City and County of Denver District Court No. 10CR3824
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dean Carbajal,

Defendant-Appellant.

ORDER AND SENTENCE AFFRIMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Dean Carbajal, Pro Se

¶ 1     Defendant, Dean Carbajal, appeals the district court's orders denying his most recent postconviction motion and resentencing him following the vacatur of his habitual criminal sentence.  We affirm.

## I.     Background

¶ 2     In 2011, a jury found Carbajal guilty of multiple counts of violation of a protection order, multiple counts of violation of bail bond conditions, multiple counts of second degree burglary, multiple counts of first degree trespass, multiple counts of stalking, and one count of second degree kidnapping.  In 2012, the trial court adjudicated Carbajal a habitual offender and sentenced him to a total of one hundred fifty-one and a half years in the custody of the Department of Corrections (DOC).

¶ 3     A division of this court affirmed Carbajal's convictions and sentences on direct appeal.  *People v. Carbajal*, (Colo. App. No. 12CA0410, June 30, 2016) (not published pursuant to C.A.R. 35(e)) (*Carbajal I*).  The court issued the mandate on April 27, 2017.

¶ 4     In 2017, Carbajal filed his first pro se motion for postconviction relief pursuant to Crim. P. 35, which the district court denied.  Carbajal appealed, and another division of this court

1

affirmed in part, reversed in part, and remanded the case for further proceedings concerning Carbajal's challenge to the proportionality of his habitual criminal sentence. *People v. Carbajal*, (Colo. App. No. 17CA2337, Mar. 25, 2021) (not published pursuant to C.A.R. 35(e)) (*Carbajal II*). The court issued the mandate on May 28, 2021.

¶ 5 Meanwhile, in 2019, one of the felony convictions that served as a predicate for Carbajal's habitual criminal sentence was vacated. As a result, in March 2020, while his postconviction appeal in *Carbajal II* was still pending, Carbajal filed a second pro se postconviction motion challenging the legality of his habitual criminal sentence and contending, among other things, that the use of the now-vacated predicate conviction for impeachment at his trial violated his constitutional rights. The People conceded that Carbajal was entitled to be resentenced but opposed the other claims raised in his motion.

¶ 6 On January 7, 2022, after the mandate was issued in *Carbajal II*, the district court held a hearing to consider the claims raised in Carbajal's second postconviction motion and to resentence him.

The court denied Carbajal's postconviction claims and resentenced him to a combined thirty-six years in DOC custody.

¶ 7    In this single appeal, Carbajal directly appeals his new sentence, appeals the court's denial of his postconviction motion, and raises new challenges to the court's jurisdiction. We first address the challenges to Carbajal's underlying conviction, which include arguments that the court lacked jurisdiction and erred by denying his second postconviction motion. We then address Carbajal's challenges to his new sentence.

## II.    Challenges to the Underlying Conviction

¶ 8    Carbajal challenges the underlying judgment of conviction, contending that the district court (1) lacked subject matter jurisdiction and (2) erred by denying his second postconviction motion. We disagree.

### A.    Crim. P. 35(c)

¶ 9    Crim. P. 35(c) permits postconviction review of alleged constitutional errors in criminal proceedings. *People v. Sherman*, 172 P.3d 911, 915-16 (Colo. App. 2006). A postconviction court may summarily deny a Crim. P. 35(c) motion if "the motion, the files, and the record clearly establish that the allegations in the

motion lack merit and do not entitle the defendant to relief." *Kazadi v. People*, 2012 CO 73, ¶ 17. With exceptions that are not applicable in this case, the rule requires that the court "deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant." Crim. P. 35(c)(3)(VI). The rule also bars claims "that could have been presented in an appeal . . . or postconviction proceeding previously brought" except claims based on events that occurred after initiation of the defendant's prior appeal or claims that the sentencing court lacked subject matter jurisdiction. Crim. P. 35(c)(3)(VII).

¶ 10 While Crim. P. 35(c) is designed to prevent injustices after conviction and sentencing, it is "not intended to establish a procedure which would allow continuing review of issues previously decided against the defendant." *People v. Hubbard*, 519 P.2d 945, 947 (Colo. 1974); *see also People v. Rodriguez*, 914 P.2d 230, 249-50 (Colo. 1996). In cases like this one, in which "a defendant has already directly appealed his conviction and lost, and has likewise failed to obtain postconviction relief upon application to the trial court and review by an appellate court," the rule does not provide

the defendant with another chance to collaterally attack his conviction, even following a resentencing. *People v. Dunlap*, 222 P.3d 364, 369 (Colo. App. 2009) ("Because defendant would seek to attack his conviction, not just his sentence, we decline to allow a new appeal, which would effectively open his entire case to relitigation, contrary to finality principles."); *see also Hunsaker v. People*, 2021 CO 83, ¶¶ 21-26 ("A defendant who successfully corrects an illegal sentence may thereafter collaterally attack their conviction, but they may only raise arguments addressing how the illegality in the sentence potentially affected the original conviction.").

¶ 11    We review a district court's ruling on a Crim. P. 35(c) motion following an evidentiary hearing as a mixed question of fact and law. *People v. Sharp*, 2019 COA 133, ¶ 12. We defer to the district court's factual findings if they have record support and review de novo its legal conclusions. *Id.*

### B. Jurisdictional Contentions

¶ 12    Carbajal contends that the district court lacked subject matter jurisdiction to enter his judgment of conviction because (1) the charges in the underlying case had already been brought and

5

dismissed in other cases; (2) the case was improperly bound over from the county court to the district court, and the prosecution failed to file an information in the district court; and (3) several charges brought in the underlying case were based on a repealed statute. None of these contentions demonstrate a jurisdictional defect.

### 1. Subject Matter Jurisdiction

¶ 13 "Subject matter jurisdiction concerns a court's authority to deal with the class of cases in which it renders judgment." *People v. Sims*, 2019 COA 66, ¶ 14. A court has subject matter jurisdiction "where it has been empowered to entertain the type of case before it by the sovereign from which the court derives its authority." *Wood v. People*, 255 P.3d 1136, 1140 (Colo. 2011). Article VI, section 9(1), of the Colorado Constitution vests the district court with original jurisdiction in all criminal cases. *Sims*, ¶ 14.

¶ 14 In addition to a court's general authority to hear a case, subject matter jurisdiction must also be properly invoked before the district court can act. *Id.* at ¶ 15. In criminal matters, a court's jurisdiction is invoked by the filing of a legally sufficient complaint, information, or indictment. *Id.*

6

¶ 15    Jurisdictional defects may be raised at any time, *People v. Torkelson*, 971 P.2d 660, 661 (Colo. App. 1998), but "prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions," *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999).  We review de novo whether the district court had subject matter jurisdiction.  *Dodge v. Padilla*, 2023 COA 67, ¶ 9.

## 2.    Duplicative Filing of Charges

¶ 16    As best we understand, Carbajal contends that when the prosecution initially charged him, it filed the fourteen charges across "numerous shell cases" — namely, Denver County Court Case No. 10M10759 and Denver District Court Case Nos. 10CR3823, 10CR3825, 10CR3859, and 10CR3875 — in addition to the underlying case, Denver District Court Case No. 10CR3824.  According to Carbajal, the prosecution "refused to prosecute these shell cases," and they were "dismissed . . . for failure to prosecute," but "before these cases were dismissed, the prosecution illegally refiled each of the respective charges that were filed in the five subject cases . . . into case 10CR3824."  As a result, he argues, the charges "remained sub judice and jurisdiction remained with the

7

original filings," depriving the district court in this case of jurisdiction over those charges. The People counter that because Carbajal did not raise this contention in the district court, we should deny it without further consideration.

¶ 17    To the extent Carbajal challenges the district court's subject matter jurisdiction, he may raise that challenge at any time, including for the first time on appeal. *See Torkelson*, 971 P.2d at 661. But Carbajal's contention does not implicate the court's subject matter jurisdiction; at most, it implicates Carbajal's constitutional right against double jeopardy. *See People v. Arzabala*, 2012 COA 99, ¶ 21 ("Double jeopardy is commonly implicated where multiple counts are charged and multiple punishments imposed for the same criminal conduct.").

¶ 18    A claim that Carbajal's conviction was obtained in violation of his constitutional rights must be raised in accordance with Crim. P. 35(c). *See Sherman*, 172 P.3d at 915-16. And because this claim "could have been presented in an appeal . . . or postconviction proceeding previously brought," and Carbajal has not asserted, much less shown, that any relevant exceptions apply, it is barred as successive. Crim. P. 35(c)(3)(VII).

8

### 3.    Bind Over and Information

¶ 19    Carbajal contends that the district court lacked jurisdiction because (1) the charges brought against him in county court were improperly bound over to the district court, and (2) the prosecution failed to file a valid information in the district court.

¶ 20    Carbajal made the same arguments in his direct appeal in *Carbajal I*. There, the division understood him to argue "that the prosecution filed charges in county court, which improperly transferred venue and joined the charges into one case in the district court — all without dismissing the charges in the county court or filing a valid information in the district court." *Carbajal I*, slip op. at 21-22. Ultimately, the *Carbajal I* division determined that "the district court had jurisdiction over the case, and the prosecution properly consolidated the case." *Id.* at 21.

¶ 21    Because these claims were raised and resolved in *Carbajal I*, they must be denied. *See* Crim. P. 35(c)(3)(VI) (mandating that a court "shall deny any claim that was raised and resolved in a prior appeal" and providing no exception for claims alleging jurisdictional defects); *see also People v. McDowell*, 219 P.3d 332, 335 (Colo. App. 2009) ("A defendant cannot use a Crim. P. 35 proceeding to

relitigate matters that were fully and finally resolved in an earlier appeal.").

### 4. Repealed Stalking Statutes

¶ 22 Carbajal contends that his stalking convictions are "void for want of jurisdiction" because the district court "impos[ed] judgment under a repealed stalking statute in absence of [d]ue [p]rocess of law." We disagree.

### a. Additional Background

¶ 23 The prosecution filed its complaint and information against Carbajal in September 2010, charging him with seventeen counts, including one count of stalking (count 17) under section 18-3-602(1)(c), (5), C.R.S. 2010. In January 2011, the district court granted the prosecution's motion to amend count 17 to reference section 18-9-111(4)(b)(I), (5)(b), C.R.S. 2010, and to add a second stalking count (count 18) under section 18-9-111(4)(b)(III), (5)(b), C.R.S. 2010. Both stalking counts charged a date range of May 12, 2010, to August 28, 2010.

¶ 24 In 2010, the legislature enacted House Bill 10-1233, which repealed, reenacted, and relocated former section 18-9-111(4)(b) and (5) to new section 18-3-602(1) and (3), C.R.S. 2010. Ch. 88,

secs. 1, 10, § 18-3-602(1), (3), 2010 Colo. Sess. Laws 294-97. The bill took effect on August 11, 2010. *Id.* at 297.

### b. The Relocated Statutory Provisions Do Not Impact the District Court's Jurisdiction

¶ 25 Carbajal contends that because the amended complaint and information reflected the repealed, reenacted, and relocated version of the stalking statute, the trial court lacked jurisdiction to convict him on counts 17 and 18. Specifically, he argues that "[b]ecause this stalking charge did not exist under section 18-9-111, C.R.S., the extant stalking convictions are void."

¶ 26 During the January 7, 2022, hearing, the district court considered and denied this claim, reasoning that Carbajal had identified a "notice requirement" rather than a jurisdictional contention and that there was "no indication that Mr. Carbajal didn't know that he was protecting himself from a stalking charge." The court also explained that Carbajal's contention "could have been raised on the first appeal [but] it wasn't. It's being raised now as a jurisdictional argument because jurisdiction can always be argued." We agree with the district court's analysis.

¶ 27    Had the relevant stalking provision been repealed prior to Carbajal's illegal conduct and not been reenacted at the time of his conviction, his contention might have merit. *See People v. Wetter*, 985 P.2d 79, 80 (Colo. App. 1999) ("[A] a defendant may not be convicted of a crime where . . . the General Assembly has expressly repealed the statute defining that crime."). But those are not our facts. Instead, the statute was simultaneously repealed, reenacted, and relocated, constituting a continuation of the existing law. *See* § 2-4-208, C.R.S. 2024 ("A statute which is reenacted, revised, or amended is intended to be a continuation of the prior statute and not a new enactment, insofar as it is the same as the prior statute."); *see also Sec. Life & Accident Co. v. Heckers*, 495 P.2d 225, 227 (Colo. 1972) ("[T]he provisions of any law or statute which is reenacted, amended or revised, so far as they remain the same, are to be construed as a continuation of such laws and not as new enactments."). Because the law criminalized Carbajal's conduct at the time he engaged in it, the district court had jurisdiction to

adjudicate the criminal charges against him based on that conduct.[1]

¶ 28     Carbajal's contention does not implicate the court's jurisdiction to hear his case but rather implicates Carbajal's due process right to notice of the charges against him. *See People v. Cooke*, 525 P.2d 426, 428 (Colo. 1974) ("The right of an accused to notice of the charges which have been made against him . . . lies at the foundation of due process of law."). This due process claim could have been brought in a prior proceeding and is now barred. *See* Crim. P. 35(c)(3)(VII).

C.     Collateral Attacks on Underlying Conviction

¶ 29     Carbajal contends that the district court erred by denying his postconviction claims collaterally attacking his underlying conviction on the following grounds: (1) the two stalking convictions were "illegal under the rubric of C.R.S. § 18-1-408[, C.R.S. 2024]," because they were based on identical evidence; (2) the two stalking

---

[1] We also note that the statute cited in the amended complaint and information was in effect during at least part of the date range charged in the stalking counts, and Carbajal fails to explain how the court lacked jurisdiction over his conduct occurring prior to August 11, 2010.

convictions violate double jeopardy because they are multiplicitous; (3) the two burglary convictions based on the predicate offense of trespass with the intent to violate a protection order violate double jeopardy; and (4) the use of a now-vacated felony conviction for impeachment at his trial violated his constitutional rights to due process and to testify. We conclude that his first three claims are successive, and his last lacks merit.

### 1. Successive Challenges

¶ 30 The People argue that we should not address several of Carbajal's contentions because they were or could have been raised in his direct appeal or in his first postconviction proceeding. *See* Crim. P. 35(c)(3)(VI), (VII); *McDowell*, 219 P.3d at 335. We agree and conclude that the following claims are barred as successive:

- claims that Carbajal's stalking convictions were based on identical evidence or that his consecutive sentences on those convictions are illegal for that reason;[2]

---

[2] The division in *Carbajal II* already held that "arguments that Carbajal's convictions were based on identical evidence" could have been raised in Carbajal's direct appeal and were barred as successive under Crim. P. 35(c)(3)(VII). *People v. Carbajal*, slip op. at ¶ 41 (Colo. App. No. 17CA2337, Mar. 25, 2021) (not published pursuant to C.A.R. 35(e)) (*Carbajal II*).

- the claim that Carbajal's stalking convictions are multiplicitous and violate double jeopardy; and

- the claim that Carbajal's convictions for burglary based on trespass with intent to violate a protection order violate double jeopardy.[3]

### 2.    Use of a Vacated Conviction for Impeachment

¶ 31    Carbajal contends that the district court violated (1) his right to due process by ruling that the prosecution could use a prior felony conviction that was later vacated to impeach him and (2) his right to testify by misadvising him regarding the prosecution's ability to impeach him with that felony. Although these claims collaterally attack the underlying conviction, they are not successive because the event on which they are based — the prior felony being vacated in 2019 — occurred after Carbajal's prior appeal and postconviction motion were filed. *See* Crim. P. 35(c)(3)(VII)(a) ("The court shall deny any claim that could have been

---

[3] In his opening brief, Carbajal superficially suggests that his burglary conviction raises equal protection and Eighth Amendment concerns as well. Because he does not develop those arguments, we do not address them. *See People v. Liggett*, 2021 COA 51, ¶ 53 (appellate courts do not address undeveloped arguments).

15

presented in an appeal . . . or postconviction proceeding previously brought except . . . [a]ny claim based on events that occurred after initiation of the defendant's prior appeal or postconviction proceeding."). Even so, we reject these claims on the merits.

### a. Additional Background

¶ 32    In 2008, Carbajal was convicted of criminal trespass in Jefferson County Case No. 08CR267 (Jefferson County conviction).

¶ 33    In 2011, Carbajal filed a pretrial motion to collaterally attack and suppress his prior convictions, including the Jefferson County conviction, seeking to preclude their use at trial in the underlying case for the purpose of impeachment.[4] On the morning of the first day of trial, the district court heard initial arguments on Carbajal's motion. The court recognized that "for [Carbajal] to make an intelligent decision about whether or not he will . . . testify," it needed to determine whether the prosecution could impeach him with the prior convictions. Three days later, before the jury was

---

[4] Carbajal's motion also sought to prevent the use of his prior convictions as predicates for habitual criminal sentencing, but the district court bifurcated the habitual criminal counts and addressed only Carbajal's impeachment-related arguments during the first phase of the trial.

scheduled to return, the court held an evidentiary hearing on Carbajal's motion, during which Carbajal testified. The court denied the motion, ruling that two of the prior convictions challenged in the motion, including the Jefferson County conviction for which an appeal remained pending, were "available to the prosecution to use for purposes of impeachment" under section 13-90-101, C.R.S. 2024. The court found that Carbajal failed to make a prima facia showing that the Jefferson County conviction was constitutionally infirm.

¶ 34 Carbajal chose not to testify at trial, but the prosecution briefly questioned his mother about the Jefferson County conviction, and she said she did not recall it.[5]

¶ 35 In 2019, after years of appeals and postconviction proceedings, the felony Jefferson County conviction was vacated and reduced to a misdemeanor.

---

[5] Although Carbajal asserts that the prosecution "repeatedly used this trespass conviction to impeach" him, he does not support that assertion with record citations. *See Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997).

¶ 36    In the postconviction motion before us now, Carbajal argued that the district court's ruling that the Jefferson County conviction could be used to impeach him at trial violated his due process rights and his right to testify because the conviction was ultimately found to be unconstitutional. At the January 7, 2022, hearing, the district court rejected Carbajal's contention, reasoning that "at the time [the Jefferson County conviction] was still a felony, so I can't find any error there."

> b.    The District Court Did Not Violate Carbajal's Due Process
>        Rights or His Right to Testify by Ruling that the Prosecution
>        Could Use His Jefferson County Conviction for Impeachment

¶ 37    Carbajal contends that because the Jefferson County conviction was vacated in 2019, the district court's ruling that the conviction could be used to impeach him during the 2011 trial violated (1) his due process right to a fair trial and (2) his right to testify because the court's ruling convinced him not to take the stand. *See Watkins v. People*, 655 P.2d 834, 837 (Colo. 1982) ("A prior conviction obtained in violation of a constitutional right of the accused cannot be used in a subsequent criminal proceeding to support guilt or to enhance punishment."). The People argue that the use of the Jefferson County conviction was proper at the time of

the 2011 trial, so the court's ruling did not violate Carbajal's constitutional rights. They argue that *People v. McNeely*, 68 P.3d 540 (Colo. App. 2002), is dispositive. Although *McNeely* does not dispose of this issue entirely, we agree that its reasoning applies.

¶ 38 In *McNeely*, the defendant argued that the trial court erred by permitting the prosecution to impeach his credibility with a conviction that was pending on direct appeal. 68 P.3d at 543. A division of this court disagreed, reasoning that "[t]he credibility of any witness may be called into question by showing that the witness has been convicted of a felony." *Id.* (citing § 13-90-101). The division explained that "[a] person is convicted when the trial court enters a judgment of conviction after either a verdict or plea of guilty has been entered." *Id.* Thus, the division concluded that when "the trial court has entered a judgment of conviction, the conviction may be used for purposes of impeachment at a later proceeding even if the appeal of that conviction is pending." *Id.*

¶ 39 At the time of Carbajal's 2011 trial, the Jefferson County conviction was on appeal but had yet to be declared unconstitutional (and would not be so declared on direct appeal). At that time, *McNeely was* dispositive, and the district court

19

correctly ruled that the prosecution could use the Jefferson County conviction for impeachment purposes under section 13-90-101. *See McNeely*, 68 P.3d at 543.

¶ 40    But the Jefferson County conviction was later vacated, a circumstance not addressed in *McNeely*.  Even so, its rationale holds.  Because the conviction was valid at the time it was used for impeachment purposes, its use did not offend Carbajal's due process right to a fair trial.  It follows logically that, because the conviction was properly available for impeachment purposes, the court did not misadvise Carbajal regarding his right to testify.  Accordingly, we perceive no constitutional violations and therefore no reason to reverse Carbajal's convictions.

D.    Challenges to the Newly Imposed Sentence

¶ 41    Carbajal contends that (1) the mittimus entered following his resentencing was entered without jurisdiction and illegally increased his sentence; (2) the district court misapprehended the minimum sentence it could have imposed during his resentencing; and (3) his newly imposed sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.  We reject each contention.

### 1. Challenges to the Mittimus

¶ 42 Carbajal contends that the district court acted without jurisdiction and altered his newly imposed sentence by entering a mittimus after the resentencing hearing that purportedly increased his sentence from thirty-six years to fifty-two years. We conclude that the court had jurisdiction to enter the mittimus and that the mittimus accurately reflects the DOC sentences the court pronounced on January 7, 2022.

#### a. The District Court Had Jurisdiction to Enter the Mittimus

¶ 43 Carbajal first contends that the district court lacked jurisdiction to enter the mittimus on March 29, 2022, because jurisdiction had already transferred to this court when he filed a notice of appeal a month earlier. We conclude that because the mittimus merely memorialized the sentence pronounced at the January 7 hearing, it was not a new order, and the court retained jurisdiction to enter it.

¶ 44 A mittimus is an administrative document that directs the sheriff to transport the convicted defendant to the appropriate correctional facility for a specified term of years. *See* § 18-1.3-409, C.R.S. 2024. Because a mittimus is merely a reflection of a court's

previously imposed order — that is, the sentence orally imposed at the defendant's sentencing hearing — it is not a new order entered by the court.  *See People v. Wiseman*, 2017 COA 49M, ¶ 52 ("What the judge says in sentencing a defendant takes precedence over the written judgment." (quoting *United States v. Cephus*, 684 F.3d 703, 709 (7th Cir. 2012))) (alteration omitted); *see also People v. Stewart*, 55 P.3d 107, 126 (Colo. 2002) (following the perfection of an appeal, the trial court retains jurisdiction over matters that do not affect the order or judgment on appeal).

¶ 45    The March 29 mittimus reflects that Carbajal was "originally sentenced on 2/10/2012" and that the original sentence "is now modified."  Immediately before setting forth the newly imposed sentence, the mittimus makes clear that the modified sentence was imposed on "1/7/2022."  The mittimus is not a new order but a reflection of the new sentence entered by the district court at Carbajal's resentencing hearing on January 7, which predated the commencement of this appeal.  Accordingly, we reject Carbajal's contention that the court lacked jurisdiction to enter the mittimus.

b.     The Mittimus Correctly Reflects the Court's DOC Sentences

¶ 46     Carbajal next contends that the district court illegally increased his combined sentence from thirty-six years to fifty-two years when it entered the mittimus.  Although we are unable to follow his calculations, we understand Carbajal to argue that the court increased the sentence it imposed on January 7 by ordering in the March 29 mittimus that the new sentences were to run consecutively to his sentences in Denver District Court Case Nos. 10CR1600 and 10CR1576.

¶ 47     A mittimus must accurately reflect the sentencing order entered by the court and include "all necessary information regarding the sentence and any information as to whether a sentence is to be served concurrent with, or consecutive to, the sentence for any other count or any other case." § 18-1.3-409.  Our review of the record reveals that the mittimus accurately reflects the DOC sentences the court imposed on January 7.

¶ 48     First, the district court made clear during the resentencing hearing that it intended to "impose [Carbajal's] sentences in the same . . . manner, consecutive versus concurrent," as had the original sentencing judge.  We understand the court's statement to

23

mean that the newly imposed sentences would run consecutive to or concurrent with other sentences in this and other cases as determined by the original sentencing judge in 2012. The original sentencing judge ordered all of Carbajal's sentences to be served consecutively to his sentences in Denver District Court Case Nos. 10CR1600 and 10CR1576. The March 29 mittimus accurately reflects that order.[6] It is thus consistent with — and does not increase — the sentence pronounced on January 7.

¶ 49     Second, our line-by-line review of the transcript of the January 7 sentencing hearing and the March 29 mittimus reveals that the mittimus accurately reflects each DOC sentence imposed.

---

[6] As noted in Part C above, we recognize that Carbajal also challenges the consecutive and concurrent nature of his original sentencing framework as violating his double jeopardy rights because the two stalking charges were based on identical evidence. However, the division in *Carbajal II* already determined that the contention is barred as successive because it could have been brought in a prior direct appeal or postconviction motion. *Carbajal II*, slip op. at ¶ 41; *see* Crim. P. 35(c)(3)(VII).

Accordingly, we reject Carbajal's contention that the court illegally increased his sentence when it entered the mittimus.[7]

### 2. The District Court Did Not Misapprehend the Statutory Minimum Sentence

¶ 50 Carbajal contends that the district court erred by concluding that the minimum sentence it had the discretion to impose was thirty-six years in DOC custody. We perceive no error.

¶ 51 Criminal sentencing is "an exercise of a trial court's discretion that is to be guided by consideration of a number of factors." *People v. Vigil*, 718 P.2d 496, 506 (Colo. 1986). While the court's discretion in sentencing is broad, the sentence imposed must be permitted by statute. *Vensor v. People*, 151 P.3d 1274, 1275 (Colo. 2007). We will not overturn a statutorily compliant sentence absent a showing of an abuse of discretion. *People v. Howell*, 64 P.3d 894, 898 (Colo. App. 2002). A sentence constitutes an abuse of

---

[7] Although Carbajal does raise this argument, we note that the district court orally imposed incorrect terms of mandatory parole on counts 7, 9, and 15, but the parole terms reflected in the mittimus follow the relevant sentencing statutes. *See* § 18-1.3-401(1)(a)(V)(A), C.R.S. 2024. Because a sentence that does not comply with the sentencing statutes is illegal, *Delgado v. People*, 105 P.3d 634, 637 (Colo. 2005), and may be corrected at any time, *People v. Sanders*, 220 P.3d 1020, 1024 (Colo. App. 2009), the court was authorized to correct the illegal parole terms when it entered the mittimus.

discretion if it is manifestly arbitrary, unreasonable, or unfair. *People v. Zuniga*, 80 P.3d 965, 972 (Colo. App. 2003). It may be necessary to remand a sentence for reconsideration if the trial court misapprehended the scope of its discretion in imposing the sentence. *People v. Linares-Guzman*, 195 P.3d 1130, 1137 (Colo. App. 2008).

¶ 52    During resentencing, the district court explained that it wanted to "undo the length of" Carbajal's habitually enhanced sentence, but that it "would be hard-pressed to come in [twelve] years after [the original sentencing judge] had made the accurate findings" and alter the framework that judge had created for how all of Carbajal's sentences would operate together. The court then said that it intended to "impose the sentences in the same . . . manner, consecutive versus concurrent," as had the original sentencing judge. Against this backdrop, the court explained that "a minimum sentence in this case . . . adds up to approximately [thirty-six] years."

¶ 53    Carbajal contends that the district court misapprehended the statutory minimum sentence it could impose, leading it to abuse its discretion in imposing a combined thirty-six-year sentence.

Specifically, Carbajal contends that if the court intended to impose the minimum sentence in his case, it would have (1) ordered all the sentences to be served concurrently; and (2) imposed a sentence of four years, the lowest possible statutory sentence permitted by the appropriate sentencing statute. *See* § 18-1.3-401(1)(a)(V)(A), C.R.S. 2024.

¶ 54    The People argue that, viewed in context, the court's comment makes clear that it did not intend to impose the absolute minimum sentence available in Carbajal's case but instead intended to impose sentences on the low end of the presumptive range while still applying the sentencing framework — concurrent versus consecutive — employed by the original sentencing judge. We agree with the People's interpretation of the court's statements.

¶ 55    In other words, we do not read the district court's statements as reflecting its misunderstanding that thirty-six years was the absolute minimum combined sentence it had the discretion to impose in Carbajal's case. The court made clear that it intended to retain the concurrent versus consecutive sentencing framework the original sentencing judge created. Working within that original sentencing framework, the court determined that a combined

27

thirty-six-year term was the minimum sentence it intended to impose. We perceive no error in the district court's understanding of its sentencing discretion.

### 3. Eighth Amendment Challenge

¶ 56 Finally, Carbajal contends that his newly imposed sentence is excessive and amounts to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *See* U.S. Const. amend. VIII. Per this court's order on May 20, 2022, this contention is not properly before us on appeal.

¶ 57 Carbajal filed his initial notice of appeal in this matter on February 28, 2022. On March 7, Carbajal moved the district court to reconsider his new sentence under Crim. P. 35(b), arguing in part that the sentence was disproportionate to the crime and constituted cruel and unusual punishment. The court denied Carbajal's motion on March 16. On April 18, Carbajal filed a supplemental notice of appeal, seeking review of the March 16 order. On May 20, this court determined that the March 16 order was entered without jurisdiction, struck Carbajal's April 18 amended notice of appeal, and dismissed without prejudice the part of the appeal relating to

the March 16 order. Thus, the March 16 order is not properly before us for review.

¶ 58 To the extent Carbajal requests that we conduct a proportionality review for the first time on appeal, we decline to do so. *See People v. Session,* 2020 COA 158, ¶ 51 (while we may conduct proportionality reviews in the first instance, we may decline to do so as trial courts are best suited to conduct the factual determinations they require).

## III. Disposition

¶ 59 We affirm Carbajal's sentence and the district court's order denying his March 2020 postconviction motion.

JUDGE J. JONES and JUDGE YUN concur.