The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 7, 2019

## 2019COA17

## No. 16CA2198, *People v. Burlingame* — Constitutional Law — Due Process; Criminal Law — Outrageous Government Conduct

A division of the court of appeals concludes that the trial

court's factual findings do not support a finding of outrageous

government conduct.  As a result, the division instructs the trial

court to reinstate the charges and remands the case to the trial

court for consideration of the remaining issues.  The special

concurrence addresses the question of what should be the correct

standard of review.

Court of Appeals No. 16CA2198
City and County of Denver District Court No. 15CR4899
Honorable Brian R. Whitney, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Jasmine Burlingame,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE NIETO*
Hawthorne, J., concurs
Tow, J., specially concurs

February 7, 2019

Beth McCann, District Attorney, Katherine A. Hansen, Deputy District
Attorney, Denver, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     The People appeal the trial court's dismissal of charges against defendant, Jasmine Burlingame, based on outrageous government conduct. We reverse and remand with directions.

## I.     Background

¶ 2     Defendant alleged that after a night out drinking with a coworker, she went with him to his home. She reported that later that evening she was raped by his roommate. She submitted to a Sexual Assault Nurse Examiner exam where samples were taken from various places on her body. Police investigators contacted the coworker and the roommate, both of whom volunteered DNA samples which the investigators then compared with the samples taken from defendant's body. The results of the DNA test conclusively showed that it could not have been the roommate who had sexual contact with defendant, but rather that it was the coworker.

¶ 3     Upon learning this, two prosecutors, an investigator from the prosecutor's office, and a police detective decided to interview defendant. Defendant was experiencing car trouble, so they visited her at home. They brought a video camera to record the interview and set defendant up on a folding chair in the camera's frame. Out

1

of the frame sat defendant's mother, other female friends and family, the prosecutors, and the investigators.

¶ 4    On the video recording, the police detective informed defendant that the DNA proved that it was the coworker, not the roommate, who had sexual contact with her, contrary to what she said had happened.  Defendant became visibly upset and began to cry.  The prosecutors informed her that they would have to drop the charges against the man she claimed raped her, and they asked her if there was anything else she would like to tell them.  Defendant made statements such as "I don't know what to say," and "I don't understand how that is possible."  She stated that she had blacked out a lot of the incident, so her memory was less than clear.

¶ 5    After several more minutes of discussion, defendant, in tears, told the investigators and prosecutors to leave, and they did.

¶ 6    Prosecutors charged defendant with two counts of attempting to influence a public servant and one count of false reporting.

¶ 7    The trial court held a hearing where defendant argued, as is relevant here, that the videotape of the interview should be suppressed, and that the case should be dismissed because the government's conduct was outrageous.  Defendant had also

2

subpoenaed one of the prosecutors who was present for the interview to testify at the hearing, which the trial court allowed, denying the prosecution's motion to quash the subpoena. During the hearing, the prosecutor, invoking the work product privilege, objected to evidence that might have shed light on the decision-making process that led the district attorney's office to the decisions to interview and file charges against the defendant.

¶ 8    In an oral ruling, the trial court dismissed the case based on a finding of outrageous government conduct. It did not rule on the request to suppress the videotape.

## II.    Analysis

¶ 9    The People assert on appeal that the trial court erred in concluding that there was outrageous government conduct warranting dismissal of the charges against defendant. We agree.

¶ 10    Trial courts determine whether there has been outrageous government conduct by "reviewing the totality of the facts in a given case." *People v. McDowell*, 219 P.3d 332, 336 (Colo. App. 2009). We review a trial court's dismissal of a case based on a finding of outrageous government conduct for an abuse of discretion. *Id.* A trial court abuses it discretion when its ruling is manifestly

3

arbitrary or unreasonable. *People v. Medina,* 51 P.3d 1006, 1011 (Colo. App. 2001), *aff'd sub nom. Mata-Medina v. People,* 71 P.3d 973 (Colo. 2003). It is an abuse of discretion if the court misinterprets or misapplies the law. *People v. Douglas,* 2016 COA 59, ¶ 54.

¶ 11    However, we note that outrageous government conduct has always been recognized as a violation of due process. *See Bailey v. People,* 630 P.2d 1062, 1068 (Colo. 1981); *McDowell,* 219 P.3d at 336; *Medina,* 51 P.3d at 1011. We review due process violations de novo. *See, e.g., Quintano v. People,* 105 P.3d 585, 592 (Colo. 2005); *People in Interest of C.J.,* 2017 COA 157, ¶ 25. We need not resolve this conflict because we conclude the trial court abused its discretion.

¶ 12    "Outrageous governmental conduct is conduct that violates fundamental fairness and is shocking to the universal sense of justice." *Medina,* 51 P.3d at 1011. Instances where trial courts have found outrageous government conduct in Colorado are vanishingly rare, and the threshold for such a finding appears to be exceedingly high. In fact, we found only one such case where a Colorado appellate court upheld a finding of outrageous government

4

conduct. *People v. Auld*, 815 P.2d 956, 959 (Colo. App. 1991) (upholding the dismissal of charges based on a finding of outrageous government conduct because the prosecution filed fake charges against an undercover agent and therefore "dup[ed the] court into becoming an accomplice" to their nefarious actions).

¶ 13    We understand the trial court's ruling to be based on (1) the fact that the interview was videotaped; (2) the fact that the prosecutors repeatedly used the work product privilege to block any evidence showing why they chose to videotape the interview or to explain their decision-making process in filing the charges; and (3) a violation of the Victim Rights Act, sections 24-4.1-301 to -305, C.R.S. 2018. The court's oral ruling is sparse, and it cites no legal authority for support. We conclude that the trial court's findings of fact do not support its conclusion that the government's conduct was outrageous.

¶ 14    First, the trial court did not cite authority or explain why videotaping the interview with defendant was improper other than the judge's personal experience and his conclusion, without evidentiary support, that this was an extraordinary and unprecedented action by the police and the prosecutors. However,

given the state's authority to investigate suspected criminal conduct, we fail to see how this fact alone can constitute outrageous conduct. *See Medina*, 51 P.3d at 1012.

¶ 15 Second, the prosecution's persistent, but largely proper, use of the work product privilege cannot form a basis for a finding of outrageous governmental conduct no matter how frustrating it may have been to the trial court. The trial court could and did use the lack of evidence caused by the objections to find that the state's sole purpose in videotaping the interview was to collect evidence against the defendant. But, as the trial court recognized, the objections were largely proper, and again we fail to see how making a proper objection to questions can constitute outrageous conduct.

¶ 16 Third, the trial court found a violation of the Victim Rights Act without identifying the specific section violated. We presume the finding relates to section 24-4.1-302.5(1)(a), C.R.S. 2018, which states that victims have "[t]he right to be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." However, the videotape shows that during the interview the defendant was treated with respect and was not harassed or abused. The large

police presence might have been intimidating, but that was mitigated by the respectful treatment and the interview taking place in the defendant's home with her family and friends present. In any event, under the circumstances shown by this record, this was at most a procedural violation that cannot support a finding of outrageous conduct. *See McDowell*, 219 P.3d at 336 (intentionally withholding *Miranda* warnings to obtain statements and then giving the warnings and repeating the questions did not constitute outrageous conduct); *Medina*, 51 P.3d at 1012 (egregious violations of a defendant's Fifth Amendment rights did not constitute outrageous conduct).

¶ 17 Finally, even considered together, these circumstances cannot be fairly said to "violate[] fundamental fairness" or to be "shocking to the universal sense of justice." *Medina*, 51 P.3d at 1011. Because the trial court's findings of fact are not supported by the record, we conclude they were arbitrary and thus an abuse of discretion.

¶ 18 At the heart of our decision is our conclusion that while the government's behavior might be considered poor judgment or even

legal error, the conduct did not rise to the level of outrageous governmental conduct.

¶ 19    Therefore, we reverse the district court's order dismissing the case and remand with directions to reinstate the charges and to consider the motions still pending before it, including whether the interview should be suppressed because the totality of the circumstances surrounding it constituted psychological coercion.

JUDGE HAWTHORNE concurs.

JUDGE TOW specially concurs.

JUDGE TOW, specially concurring.

¶ 20    I agree with my colleagues that the district court here abused its discretion in finding that the government's conduct in this case violated defendant's due process rights, and thus erred in dismissing the charges.  However, I write separately to urge the Colorado Supreme Court to revisit the standard of review in such cases.

¶ 21    The Colorado Supreme Court first acknowledged the concept of outrageous government conduct in *People v. Vandiver*, 191 Colo. 263, 552 P.2d 6 (1976).  There, in addressing the defense of entrapment, the court observed that "[a]bsent outrageous conduct by the officers violating fundamental standards of due process, the focus remains on the defendant."  *Id.* at 268, 552 P.2d at 9.  Five years later, the supreme court went a bit further and appeared to accept at least the possibility that outrageous government conduct may be a defense to a criminal prosecution in certain circumstances.  *See Bailey v. People*, 630 P.2d 1062, 1068 (Colo. 1981) (noting the consistency between the above-quoted statement in *Vandiver* and Justice Powell's concurring opinion in *Hampton v. United States*, 425 U.S. 484, 495 (1976), "in which he refused to

9

join the plurality in declaring that 'no matter what the circumstances, neither due process principles nor our supervisory power could support a bar to conviction in any case where the Government is able to prove predisposition'").

¶ 22    In *People in Interest of M.N.*, 761 P.2d 1124 (Colo. 1988), the supreme court reviewed a trial court's application of this defense. In *M.N.*, the trial court had dismissed three juvenile delinquency petitions after finding that an undercover police officer had induced the minors to commit the charged crimes, and that the officer's actions constituted outrageous government conduct that deprived the juvenile of due process. *Id.* at 1127.  A plurality of the supreme court said that "[t]he question whether circumstances are demonstrated which would bar prosecution under due process principles is for the court." *Id.* at 1129 (quoting *United States v. Szycher*, 585 F.2d 443, 445 (10th Cir. 1978)).  The plurality continued, "[t]he district court was therefore acting within its discretion when it ruled on the outrageous governmental conduct issue." *Id.*  Noting that it was "clear that the district court erred in holding that the testimony at the hearing established that the defendant had made a showing of outrageous governmental

10

conduct," the plurality held "that the district court's holding as a matter of the law that the charges must be dismissed as a result of due process violations arising from outrageous governmental conduct was erroneous and constituted an abuse of discretion." *Id.* at 1129-30.

¶ 23    Divisions of this court have applied the abuse of discretion standard announced in *M.N.  See People v. McDowell*, 219 P.3d 332, 336 (Colo. App. 2009); *People v. Medina*, 51 P.3d 1006, 1011 (Colo. App. 2001), *aff'd sub nom. Mata-Medina v. People*, 71 P.3d 973 (Colo. 2003).

¶ 24    I believe the language in *M.N.* establishing the standard of review as an abuse of discretion was not supported by the authority on which it relied and was (and remains) inconsistent with the standard of review of due process claims in every other context.

¶ 25    First, upon close analysis, it is not even clear whether the court in *M.N.* actually reviewed the matter for an abuse of discretion.  The court did not recite what test is applied to determine whether a trial court abuses its discretion.  Rather, it quickly concluded that the trial court had erred, without applying any particular test.

¶ 26    Moreover, even if the review conducted in *M.N.* was for an abuse of discretion, there is no clear explanation as to why such review would be applicable.  In fact, the invocation and application of abuse of discretion review was not supported by citation to *Szycher*, or any other case.  The court in *M.N.* correctly quoted the Tenth Circuit's decision in *Szycher*, which held that the question whether due process was violated was "for the court."  761 P.2d at 1129 (quoting *Szycher*, 585 F.2d at 445).  But the context of that statement in the federal case is informative.

¶ 27    There, the outrageous government conduct claim was closely intertwined with an entrapment defense.  *Szycher*, 585 F.2d at 445.  The jury had been permitted to consider (and had rejected) the entrapment defense, while the court had ruled on the outrageous government conduct claim.  The Tenth Circuit panel opined that "the trial judge was correct in deciding this issue himself.  The question whether circumstances are demonstrated which would bar prosecution under due process principles is for the court."  *Id.*  In other words, the Tenth Circuit was addressing whether the trial court appropriately removed consideration of this particular defense

12

from the jury's purview, not whether the decision by the trial court was a discretionary one.

¶ 28    Nor does abuse of discretion review necessarily flow from the mere premise that the question is one "for the court."  The characterization of an issue as one "for the court" rather than "for the jury" generally means it is not a factual but rather a legal determination.  An appellate court generally reviews a trial court's legal conclusions de novo.  *See, e.g., Westin Operator, LLC v. Groh*, 2015 CO 25, ¶¶ 18-19 (reviewing de novo a trial court's ruling granting summary judgment on the legal question of whether there was a duty); *Peper v. St. Mary's Hosp. & Med. Ctr.*, 207 P.3d 881, 888 (Colo. App. 2008) (observing that immunity "is a question of law for the court to decide" and applying de novo review) (citation omitted); *Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1220 (Colo. App. 2008) (applying de novo review to the construction of a contract, which "is a question of law for the court"); *Bd. of Cty. Comm'rs v. City of Aurora*, 62 P.3d 1049, 1053 (Colo. App. 2002) (noting that interpretation of the Municipal Annexation Act "is a question of law for the court to decide, and our review is therefore de novo").

¶ 29    Indeed, had the supreme court looked to the federal courts for guidance on the standard of review, it would not have found any support for applying an abuse of discretion review.  I could find no cases that had been decided when *M.N.* was announced applying an abuse of discretion review; to the contrary, those cases that had stated a standard of review had reviewed the matter de novo.  *See, e.g., United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir. 1988); *United States v. Valona*, 834 F.2d 1334, 1343 (7th Cir. 1987).

¶ 30    In the intervening years, the Tenth Circuit has clearly said that outrageous government conduct claims are reviewed de novo.  *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994).  In doing so, the trial court's factual findings are reviewed under the clearly erroneous standard.  *United States v. McKissick*, 204 F.3d 1282, 1295 (10th Cir. 2000).  In other words, these rulings are reviewed as mixed questions of law and fact.

¶ 31    As for state courts, none aside from the Colorado Supreme Court has clearly established abuse of discretion as the standard of review in this area.  Indeed, the California Court of Appeals is the only other state court that employs abuse of discretion review in this area, and that judicial body has a split of authority on the

point.  *Compare People v. Uribe*, 132 Cal. Rptr. 3d 102, 120-21 (Cal. Ct. App. 2011) (reviewing de novo), *with People v. Velasco-Palacios*, 185 Cal. Rptr. 3d 286, 290 (Cal. Ct. App. 2015) (reviewing for an abuse of discretion).  Of the other states that have considered the issue, many take the same approach as the federal courts, reviewing it as a mixed question of law and fact.  *See State v. Williamson*, 343 P.3d 1, 6 (Ariz. Ct. App. 2015); *State v. Simmons*, 364 S.W.3d 741, 745 (Mo. Ct. App. 2012); *State v. Laurence*, 848 A.2d 238, 250 (R.I. 2004); *State v. Valentine*, 935 P.2d 1294, 1305 (Wash. 1997); *State v. Houston*, 475 S.E.2d 307, 321 (W. Va. 1996).  Other states have held that the ultimate question of whether government conduct violated a defendant's right to due process is reviewed de novo, without mention of any deferential review of the trial court's factual findings.  *See Todd v. State*, 425 S.W.3d 25, 32 (Ark. Ct. App. 2012); *State v. Nelson*, 822 P.2d 53, 56 (Kan. 1991); *State v. Fitzpatrick*, 291 P.3d 1106, 1109 (Mont. 2012); *State v. Hoverson*, 710 N.W.2d 890, 895 (N.D. 2006); *State v. Hudson*, 2012 WI App 118, ¶ 8.

¶ 32	Even within Colorado, abuse of discretion review is generally not the applicable standard in areas of constitutional inquiry.

Rather, Colorado's appellate courts apply the "mixed question of law and fact" in such scenarios. For example, "[w]e defer to a trial court's findings of credibility and historical facts so long as they are supported by the record. But we review de novo the legal determination of whether an individual is in custody for *Miranda* purposes." *People v. Sampson*, 2017 CO 100, ¶ 16 (citation omitted). The same standard is used when reviewing "whether a seizure violated constitutional prohibitions against unreasonable searches and seizures." *People v. Funez-Palagua*, 2012 CO 37, ¶ 6. And the "mixed question of law and fact" review standard has been applied in a different due process context. *Bernal v. People*, 44 P.3d 184, 206-07 (Colo. 2002) (reviewing whether a pretrial identification procedure violated the defendant's right to due process by creating a very substantial likelihood of misidentification).

¶ 33    In still other due process contexts, our appellate courts have reviewed de novo whether a defendant's right to due process was violated. In *Quintano v. People*, the supreme court reviewed de novo whether the defendant's due process rights were denied when the prosecution failed to elect the particular act on which it relied for conviction. 105 P.3d 585, 592-93 (Colo. 2005). In *People v.*

*Calderon*, a division of this court reviewed de novo a claim that the defendant's due process rights were violated when his probation was revoked without his having received notice of the probation conditions. 2014 COA 144, ¶ 23. And in *People v. Nave*, another division of this court applied de novo review to the question whether the defendant's due process rights were violated as a result of lost or destroyed evidence. 689 P.2d 645, 647 (Colo. App. 1984).

¶ 34     The due process claims in *Quintano*, *Calderon*, and *Nave* generally are not the type of claims that will present significant factual disputes. Thus, a pure de novo analysis makes sense in those circumstances. However, a claim of outrageous government conduct will necessarily involve factual findings by the trial court. Indeed, the plurality in *M.N.* observed that such a claim must "be tested by an appraisal of the totality of facts in a given case." 761 P.2d at 1129 (quoting *United States v. Spivey*, 508 F.2d 146, 149 n.2 (10th Cir. 1975)). Consequently, in my view, the appropriate standard of review of outrageous government conduct claims is to defer to the trial court's factual findings unless clearly erroneous, and then review de novo the ultimate conclusion as to whether the defendant's right to due process was violated.

17

¶ 35    I do not deny that often, as here, one can reach the same result after reviewing for an abuse of discretion. Nevertheless, applying such a deferential standard of review to an issue of constitutional magnitude is an extreme outlier. This anomaly engenders confusion and risks creating inconsistencies and disparities in our due process jurisprudence. For these reasons, I urge the supreme court to look anew at this important question.