22CA1818 Peo v Tapia 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1818
El Paso County District Court No. 21CR4446
Honorable Michael P. McHenry, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Paul Frank Tapia,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Gomez and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Paul Frank Tapia, appeals his conviction for felony driving while ability impaired (DWAI) under section 42-4-1301(1)(b), C.R.S. 2024. We affirm in part, reverse in part, and remand to the district court to correct the mittimus.

## I.    Background

¶ 2    On August 6, 2021, Deputy Ian Devlin with the El Paso County Sheriff's Office was on duty in Colorado Springs when he stopped Tapia after seeing his car straddling two lanes of the road. After speaking with Tapia and conducting a field sobriety test, Devlin concluded that Tapia was intoxicated beyond the legal limit and arrested him.

¶ 3    Devlin then generally explained Colorado's expressed consent law and offered Tapia the choice of a breath or blood test. *See* § 42-4-1301.1(1), (2)(a)(I), C.R.S. 2024. Because Tapia lacked a valid driver's license, Devlin said he did not detail the consequences of refusing chemical testing. Expressing concerns about leaving his car unattended, Tapia refused testing.

¶ 4    Tapia was charged with six counts, including, as relevant here, driving under the influence (DUI) – fourth or subsequent offense (a class 4 felony) and five traffic-related offenses. *See* § 42-

1

4-1301(1)(a).  The State dismissed one traffic-related count, and Tapia's case went to trial in 2022 on the remaining five counts.

¶ 5     Tapia's first trial ended in a mistrial after the State inadvertently introduced suppressed evidence.  The second trial was bifurcated.  In the first phase, the jury considered only whether Tapia had committed the substantive DUI offense, not whether he had the requisite prior convictions for a felony DUI.  The jury convicted him of DWAI, a lesser included offense, and the remaining traffic offenses.  *See* § 42-4-1301(1)(b).  In the second phase, the jury found that Tapia's prior convictions elevated his 2022 DWAI conviction to a class 4 felony.  *See id.*  He was sentenced to two years of supervised probation and ninety days in jail.

¶ 6     On appeal, Tapia challenges his DWAI conviction on three grounds.  First, he contends that the district court erroneously denied his motion for a mistrial after the prospective jury watched a video explaining that juries of twelve hear felony cases, and a prospective juror asked whether the case was a felony.  Second, he contends that the district court erred by instructing the jury that it could consider his refusal to take a chemical test as evidence of his guilt or innocence.  Third, in the second phase of his trial, he

argues that the district court erroneously admitted an exhibit that the prosecution used to prove a prior DWAI conviction.

¶ 7 On the first and second issues, we find no error and affirm. On the third, we conclude that the district court erred by admitting the challenged evidence and reverse Tapia's conviction only as it relates to the felony DWAI. We therefore instruct the district court to correct the mittimus to reflect a misdemeanor, not a felony, DWAI conviction.

## II. Discussion

### A. The District Court Properly Refused to Grant a Mistrial

¶ 8 Tapia first argues that the district court erred by denying his motion for a mistrial after a prospective juror asked whether the case involved a felony. We perceive no error.

#### 1. Additional Facts

¶ 9 During voir dire, the prosecution asked the prospective jury to share "anything . . . that we would need to know in deciding if you are fair and impartial jurors for this case." Prospective Juror M said she was familiar with DUIs from receiving one when she was younger, and her mother "had four or five DUIs." Juror M discussed her mother's challenges with being "in the system" and

"the felony [that] comes with all of that stuff." The prosecution further probed Juror M's ability to be impartial, asking whether she would be comfortable with the potential penalties in Tapia's case. Juror M responded: "Yeah . . . . But I didn't know — so like — this is a felony, right? It's 12 jurors? . . . I feel like — is it a felony DUI, or is it only other charges that come with it that make[] it a felony?"

¶ 10 The prosecution deferred the question to the district court, who responded that the attorneys were not allowed to share "the level of offense." Juror M explained that she asked "because they told us 12 jurors were felonies in the video that we just watched." The subject video is eighteen minutes long and broadly explains the legal system and a jury's role in trials. The video briefly describes different types of juries, explaining that "twelve person juries hear felony cases involving the most serious crimes."

¶ 11 Acknowledging its awareness of the video, the district court said there were "a million different legal reasons that a case could be in district court as opposed to county court, and we're not going to elaborate on what those issues are. So, I guess, the shorthand of what I'm telling you is, there is some information we're holding back from you."

¶ 12    Later in voir dire, the defense asked the prospective jurors about their potential biases if a defendant in a DUI trial chose not to testify. Juror F said, "If I was in his situation under these charges, I would want to talk for myself . . . explain my situation. Seems like very serious charges, right?" Juror S offered that, given the "gravity [of the] situation" and "the charges . . . I think my confidence has kind of declined on whether I can be completely impartial."

¶ 13    Jurors M, F, and S were dismissed. After the final twelve jurors were sworn in, the defense moved for a mistrial, arguing that the video and Juror M's question about whether the trial involved a felony charge had tainted the jury pool. The defense was concerned about the jury knowing that "a felony DUI is a repeat DUI."

¶ 14    The district court noted that it had previously wondered whether the video might cause an issue but declined to grant a mistrial, concluding that there was no real prejudice because (1) the jury had not learned of any "uncharged misconduct"; (2) the jury had not been told why there was a twelve-person jury; and (3) the trial was bifurcated.

¶ 15 The district court also admonished defense counsel for not objecting before the jury was sworn in. The prosecutor took partial responsibility for the delay because, anticipating the objection, she told defense counsel, "we can probably just do this when the judge sends them back." However, defense counsel acknowledged that he waited partly because he did not want to "make[] that moment any greater" by objecting contemporaneously.

### 2. Standard of Review and Applicable Law

¶ 16 A district court's refusal to grant a mistrial may implicate due process, *see People v. Van Meter*, 2018 COA 13, ¶ 12, and we review alleged due process violations de novo, *People v. Burlingame*, 2019 COA 17, ¶ 11. However, absent a constitutional violation, we review the decision to deny a mistrial for an abuse of discretion. *See Van Meter*, ¶ 9. A district court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or contrary to law. *Id.* In this context, a district court "has considerable discretion" because it "is in a better position to evaluate any adverse effect of improper statements or testimony on a jury." *Id.* (citation omitted).

¶ 17 "When a prospective juror makes a potentially prejudicial statement during voir dire, the trial court may issue a curative

6

instruction; canvass the jury; or declare a mistrial." *Id.* at ¶ 10
(citation omitted). "Whether a prospective juror's statement is
potentially prejudicial depends significantly on the facts and
circumstances." *People v. Avila*, 2019 COA 145, ¶ 53, *overruled in
part on other grounds by Tibbels v. People*, 2022 CO 1. As a drastic
remedy, a mistrial "is 'only warranted where the prejudice to the
accused is too substantial to be remedied by other means.'" *Van
Meter*, ¶ 11 (quoting *People v. Collins*, 730 P.2d 293, 303 (Colo.
1986)).

¶ 18    A prospective juror's statement that exposes the jury to
extraneous information may implicate a defendant's due process
right to a fair trial, warranting a mistrial. *See id.* at ¶¶ 12-13. To
determine whether such a statement implicated due process, we
consider "whether the information was improperly before the jury,
and . . . 'whether there is a reasonable possibility that the
extraneous information influenced the verdict' to the defendant's
detriment." *Id.* at ¶ 12 (citation omitted). Purely speculative
allegations about the effects of a prospective juror's statement on
other jurors do not meet this standard. *See id.* at ¶ 14.

### 3. Analysis

¶ 19     Tapia contends that the district court erred by not granting his request for a mistrial given the combined prejudicial effects of Juror M's statements and the video shown to the jury pool. He argues that the prejudice is "substantial" because a felony DUI necessarily suggests prior offenses. Yet he also notes that learning the offense was a felony "*potentially* informed [the jury] of criminal history [it] otherwise wouldn't have known about." (Emphasis added.) To support his argument that Juror M's statement "tainted the entire jury pool," Tapia cites Juror F's and Juror S's comments about the nature of the charges.

¶ 20     The State argues that Tapia waived any right to request a mistrial by failing to object until after the jury was sworn in and that Tapia's claim of prejudice is too speculative to warrant a mistrial. *See* Crim. P. 24(b)(2) ("All matters pertaining to the qualifications and competency of the prospective jurors shall be deemed waived . . . if not raised prior to the swearing in of the jury . . . ."); *People v. Mumford*, 275 P.3d 667, 671 (Colo. App. 2010) (concluding that a defendant waived his right to request a mistrial under Crim. P. 24(b)(2) by objecting too late), *aff'd*, 2012 CO 2.

8

¶ 21    Even assuming Tapia did not waive the error, we cannot say

that the prejudice was significant enough to warrant a mistrial

because his claims of prejudice rest on speculation. *See Van Meter*,

¶¶ 13-14. Juror F's and Juror S's comments related to a

defendant's right not to testify. Neither comment suggested that

Tapia was charged with a felony due to previous convictions. And

while Tapia assumes that an average juror knows felony DUIs

require prior offenses, the record does not substantiate this.

¶ 22    For example, Juror M had received a DUI, was familiar with

repeat DUI offenses from her mother, and implied that her mother

had received a felony DUI. Yet she asked if the trial was for a felony

offense because of "other charges that come with it," suggesting

that felony DUIs require multiple *concurrent* charges, not *prior*

convictions. If a juror so familiar with DUIs did not know that a

felony DUI requires prior convictions, we cannot conclude that the

average juror would understand that "a felony DUI necessarily

implies" prior offenses. And even if some jurors potentially

concluded that the case involved a felony because of prior offenses,

that alone is insufficiently prejudicial to warrant a mistrial. *See*

*People v. Kembel*, 2023 CO 5, ¶¶ 54, 57 (holding that bifurcating

9

trials is improper, and evidence of prior convictions in felony DUI trials "is not unfairly prejudicial").

¶ 23     Next, similar cases have required stronger evidence of prejudice to warrant a mistrial.  For example, in *Van Meter*, a division of this court found no abuse of discretion when the district court refused to grant a mistrial after a prospective juror, who was a deputy sheriff, said during voir dire that he was aware of the case because he had transported the defendant to court.  *Van Meter*, ¶¶ 6, 13.  The defense argued that this statement prejudicially informed the jury that Van Meter was in custody, but the division concluded that the statement did not taint the rest of the jury because the prospective juror was dismissed and did not say when he transported Van Meter to court.  *Id.* at ¶¶ 6, 13-14.

¶ 24     In *State v. Marchbanks*, 632 N.W.2d 725, 728 (Minn. Ct. App. 2001), the court similarly held that a mistrial was not required after a prospective juror asked if the "[defendant] was ineligible to possess a firearm because [he] was a felon."  The court reasoned that there was no prejudice where the prosecutor refused to answer the question, and the prospective juror did not serve on the jury.  *Id.* at 729.  Conversely, in *State v. Yurk*, 638 P.2d 921, 925, 928

(Kan. 1982), the court held that a mistrial should have been granted when a sitting juror admitted that he had read a newspaper article discussing the defendant's prior convictions.

¶ 25    Here, as in *Marchbanks* and *Van Meter*, the prospective jurors who made allegedly prejudicial statements were dismissed. And neither the prosecution nor the court answered Juror M's question. Her question was also less prejudicial than the comments in those cases because she did not suggest that Tapia had prior convictions or was incarcerated. And unlike *Yurk*, there was no evidence that sitting jurors suspected or learned of Tapia's prior convictions.

¶ 26    Tapia also argues that a prospective juror's suggestion that the trial involves a felony charge is itself prejudicial, especially if jurors are unlikely to suspect the offense is a felony. We are not persuaded.

¶ 27    To support this argument, Tapia cites cases discussing the prejudicial effects of exposing jurors to sentencing information. *E.g., Shannon v. United States*, 512 U.S. 573, 579 (1994); *United States v. Greer*, 620 F.2d 1383, 1384-85 (10th Cir. 1980). But sentencing is not synonymous with an offense's level. Learning that a defendant faces a certain sentence is more specific and potentially

prejudicial than generally learning that an offense is a felony. And nothing in the record suggests the jury knew or learned of the potential sentence merely from Juror M's comment and the video.

¶ 28 Finally, Tapia argues that *Kembel*, which had not yet been decided when his case went to trial, does not mitigate the alleged prejudice. There our supreme court concluded that district courts may not bifurcate criminal trials, including felony DUI trials. *Kembel*, ¶¶ 54, 57 (describing prior convictions as "always relevant and admissible" in DUI trials as "evidence of an element of the substantive offense"). We need not reach this argument because we conclude that, regardless of bifurcation, the prejudice to Tapia was not so substantial that the district court erred by refusing to grant a mistrial. *See Van Meter*, ¶¶ 11.

B. The District Court's Refusal Instruction Was Proper

¶ 29 Tapia next argues that the district court erred by instructing the jury that it could consider a person's refusal to submit to chemical testing to determine guilt or innocence. We hold that the court did not abuse its discretion by giving the instruction.

## 1. Additional Facts

¶ 30    During a jury instruction conference in the first phase of trial, the district court considered the following proposed instruction regarding a DUI or DWAI defendant's refusal to take a chemical test: "If a person refuses to submit to a chemical test, then the jury may consider such refusal along with all other evidence in determining the defendant's guilt or innocence." Initially, the defense did not object. However, after the prosecution informed the court that the instruction was not in Colorado's model jury instructions (the COLJI), the defense objected to it.

¶ 31    Tapia's objection mirrored the special concurrence's concerns in *People v. Montoya*, 2022 COA 55M, ¶ 55 (Welling, J., specially concurring), *aff'd in part and rev'd in part*, 2024 CO 20, in which Judge Welling recommended that trial courts not give refusal instructions. The defense also argued that the instruction was especially prejudicial because Tapia did not receive a "standard express consent advisement" on the consequences of refusal. The district court said that it might have agreed with defense counsel had he objected earlier, but it declined to rework the jury instruction packets to remove the disputed instruction.

### 2. Standard of Review and Applicable Law

¶ 32    We review de novo whether a jury instruction accurately informs the jury of the law. *McDonald v. People*, 2021 CO 64, ¶ 54. If the instruction is legally accurate, "we review a trial court's decision to give a particular jury instruction for an abuse of discretion." *Id.* (citation omitted). A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 33    In Colorado, evidence of a person's refusal to submit to chemical testing is admissible in DUI and DWAI trials. § 42-4-1301(6)(d). While the statute does not address jury instructions on such refusals, Colorado appellate courts have concluded that it is proper to give refusal instructions similar to the one given here. *See Cox v. People*, 735 P.2d 153, 155, 159 (Colo. 1987); *People v. Mersman*, 148 P.3d 199, 201 (Colo. App. 2006). Therefore, although "we disfavor instructions emphasizing specific evidence," it is sometimes appropriate to give "carefully-worded evidence-emphasizing instructions." *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo. 2009). For example, an instruction that the jury may, but

need not, draw an inference from certain evidence may be appropriate in certain circumstances.  *See id.*

### 3.    Analysis

¶ 34     Tapia acknowledges that Colorado appellate cases have accepted refusal instructions as proper, but he argues that these instructions improperly highlight evidence and urges us to follow Judge Welling's reasoning in *Montoya*.  He also contends that the instruction improperly favored the prosecution's refusal argument because Tapia was inadequately advised of the consequences of refusal, there was evidence that he refused out of concern for his car, and the evidence of intoxication was minimal.  For several reasons, we conclude that the district court did not err by giving the challenged instruction.

¶ 35     First, we are not bound by other divisions' decisions, *Chavez v. Chavez*, 2020 COA 70, ¶ 13, much less concurring or dissenting opinions.  So *Montoya*'s concurrence does not control our decision here.  Second, despite questioning the practice of giving refusal instructions, Judge Welling noted that "it's well established that it isn't improper for a trial court to instruct a jury in a DUI or DWAI case that it may consider 'refusal along with all other competent

evidence' in determining a defendant's guilt or innocence."

*Montoya*, ¶ 57 (Welling, J., specially concurring) (quoting *Cox*, 735 P.2d at 155).  We will not depart from this established precedent.

¶ 36     Third, Judge Welling took issue with the refusal instruction in *Montoya* partly because it "called on the jury to make a *finding* regarding whether Montoya refused chemical testing."  *Id.* at ¶ 52. The instruction said, "*If you find* that Mr. Montoya refused . . . a chemical test . . . you may consider this refusal along with other evidence . . . ."  *Id.* at ¶ 37 (majority opinion) (emphasis added). Judge Welling distinguished this instruction from the one found permissible in *Cox*, which he noted "didn't ask the jury to make any findings on the issue of refusal."  *Id.* at ¶ 52 n.1 (Welling, J., specially concurring).  The *Cox* instruction is nearly identical to the instruction given here.  *See Cox*, 735 P.2d at 155 ("If a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in determining the Defendant's guilt or innocence.").

¶ 37     Fourth, even absent precedent supporting refusal instructions, the fact that we disfavor instructions highlighting specific evidence, *Krueger*, 205 P.3d at 1157, did not make the court's decision to give

the refusal instruction manifestly arbitrary, unreasonable, or unfair, *see McDonald,* ¶ 54. The instruction emphasized evidence less than permissible inference instructions, which allow juries to draw permissible inferences from specific evidence. *See, e.g.,* COLJI-Crim. 3.5:10.SP(c) (2023) (There is "[a] permissible inference that the defendant was under the influence . . . if there was . . . 0.08 or more grams of alcohol per one hundred milliliters of blood.").

¶ 38 The refusal instruction here told the jury that it could *consider* refusal as evidence of guilt, not that refusal created a permissible inference of guilt. Model jury instructions with similar language appear elsewhere in the COLJI. *See* COLJI-Crim. D:06 (2023) ("A previous felony conviction is one factor you may consider in determining the credibility of a witness."); COLJI-Crim. F:177 (2023) ("In determining whether a substance is an imitation controlled substance, you may consider, in addition to all other relevant factors, the following . . . .").

¶ 39 Finally, we disagree with Tapia that the circumstances surrounding his alleged refusal (the lack of advisement, concern for his car, and weak intoxication evidence) rendered the instruction

17

improperly prejudicial. It was the jury's role to weigh this evidence and determine whether Tapia refused for reasons other than consciousness of guilt. *See Cox*, 735 P.2d at 159. The disputed instruction merely told the jury that it could consider refusal evidence; it did not tell the jury how to weigh such evidence.

¶ 40 Therefore, the district court did not abuse its discretion by giving the refusal instruction. *See McDonald*, ¶ 54.

C. The District Court's Evidentiary Ruling Was Erroneous

¶ 41 Finally, Tapia argues that the district court erred in the second phase of his trial by admitting evidence the prosecution introduced to prove one of Tapia's alleged prior convictions. We agree with Tapia and reverse the portion of his conviction elevating his DWAI conviction to a felony.

1. Additional Facts

¶ 42 As discussed, felony DUI and DWAI convictions require proof of "three or more prior convictions, arising out of separate and distinct criminal episodes, for DUI, DUI per se, or DWAI." § 42-4-1301(1)(a), (b). In the trial's second phase, the State sought to show that Tapia had three prior DUI or DWAI convictions from 1982, 1986, and 2000. On appeal, Tapia challenges the State's Exhibit 6

18

(the 1982 Record), documenting the alleged 1982 conviction.

Relevant portions of the 1982 Record are reproduced below.[1]



CNT STS STATUTE NUMBER       CHARGE DESCRIPTION                        CLASS
  1 ( )  042004.01204.0                    CONVERTED DESCRIPTION
         CARELESS DRIVING
     Offense Date: From: 09/24/1982 To: 09/24/1982 Time:        BAC: .000
CNT STS STATUTE NUMBER       CHARGE DESCRIPTION                        CLASS
     Arrest Date.......:              Time:          Ticket #:
     Plea..............: Plea Not Guilty            Date: 09/24/1982
     Disposition.......: Guilty                     Date: 09/24/1982

  2 ( )  042004.01202.01B               CONVERTED DESCRIPTION

...NG UNDER INFLUENCE-ALCOHOL/DRUGS
     ...Date: From: 09/24/1982 To: 09/24/1982 Time:        BAC: .000
     ...t Date.......:              Time:          Ticket #:
     ...a.............: Plea Not Guilty            Date: 09/24/1982
     ...sposition.......: Glty Lesser Crg          Date: 09/24/1982

...E DATE    EVENT DESCRIPTION              SCHD DATE    TIME      ROOM
...6/1999   (CNVA) Description not on file
     PEOPLE VS TAPIA
     092382EPC

The 1982 Record

¶ 43    The 1982 Record is from the Integrated Colorado Online Network (ICON), an online court database.  The portion of the Record at issue here involves the second count (Count 2), which the prosecution argued showed a DWAI conviction.

¶ 44    The defense repeatedly objected to the 1982 Record's admission.  Specifically, during a motions in limine conference between days two and three of the trial, it objected in part because the 1982 Record was not an original document, given the lack of

---

[1] Due to the nature of the photocopy, part of the top left corner on the second page of the 1982 Record is obscured.

internet in 1982, and there was no information on how, when, or by whom the information was copied into ICON. The district court asked the court clerk to confirm that, when courts transition from physical to electronic record-keeping systems, "courthouse employees, court clerks, or judicial assistants would look at those files and input documents into" ICON. But the clerk did not know how the process worked.[2]

¶ 45    For these reasons and others, the defense objected to the 1982 Record's authenticity and trustworthiness, arguing that it was inadmissible hearsay, not self-authenticating, and overly prejudicial under CRE 403. The prosecution countered that it was self-authenticating under CRE 902, admissible hearsay as a public record under CRE 803(8), and an ancient document under CRE 803(16). The prosecution also argued that Tapia's Division of Motor Vehicles (DMV) records corroborated the 1982 conviction.

¶ 46    Finally, the prosecutor argued that Count 2's dispositional language, describing a conviction for a lesser charge, was not ambiguous. She reasoned that — because the 1982 Record cited

---

[2] From our review of the record, this question was never answered, including at trial.

the applicable DWAI statute at the time of the offense, section 42-4-1202(1)(b), C.R.S. 1982 — it proved Tapia was charged with DUI and convicted of DWAI, the lesser included offense. Indeed, during opening statements, she said:

> [Y]ou are going to see that he was convicted in 1982 also of [DWAI]. You're going to see that there was a count for [DUI], and right below that, it is going to say convicted lesser charge. You all know . . . that [DWAI] is a lesser charge of DUI. It's the only lesser charge that a DUI has.

¶ 47     At trial, the district court admitted the 1982 Record over the defense's objection. Caitlyn Colvin, an investigator with the District Attorney's Office, testified that the 1982 Record was "a record of conviction." She also testified that Count 2 showed a charge for "driving under the influence of alcohol and drugs on 9/24/1982." As for the statutory language associated with this count, the district court took judicial notice of the fact that the DWAI statute in 1982 was section 42-4-1202(1)(b), C.R.S. 1982.

¶ 48     The prosecution later directed Colvin to Exhibit 3 (the DMV Record), the relevant portion of which is reproduced below with pertinent information boxed in red:

21



The DMV Record

¶ 49    Colvin testified that "Conviction Date" meant Tapia was convicted on July 1, 1983, and the eight points assessed on his license were consistent with a DWAI conviction. *See* § 42-2-127(5)(b)(III), C.R.S. 2024. On cross-examination, Colvin admitted that she could not testify to the "reliability or the[] point of origin" for any of the records discussed on direct and did "not work at the office where the[] documents were made." Nor did she know how the DMV obtained information from courts.[3]

¶ 50    Similarly, regarding the 1982 Record, Colvin said she did not know who entered the information into ICON, when it was entered,

---

[3] During the motions in limine conference, the district court also asked about the DMV's process for confirming and listing convictions. The prosecutor admitted that she was not sure how courts were meant to interpret the statute under which the DMV considers a defendant's failure to appear in court as a conviction. *See* § 42-2-127(6)(b), C.R.S. 2024 (considering as convictions, "a plea of no contest . . . the forfeiture of any bail . . . or the failure to appear in court by a defendant charged with DUI").

or anything else about the information's origin.[4]  Colvin also did not know what the 1982 Record's language about a "converted description" meant.  Finally, she testified that the 1982 Record's description of the offense date and plea date as September 24, 1982, was likely inaccurate because she was unaware of a situation in which both would occur on the same day.

### 2. Standard of Review and Applicable Law

¶ 51    District courts have broad discretion to determine the admissibility of evidence, and we do not disturb such determinations absent an abuse of that discretion.  *People v. Brown*, 2022 COA 19, ¶ 57.  A district court "'abuses its discretion when its evidentiary ruling "[is] manifestly arbitrary, unreasonable, or unfair,"' or reflects an erroneous understanding or application of the law."  *Id.* (citations omitted).

¶ 52    Under CRE 403, even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

---

[4] Notably, despite raising its own questions about the ICON and DMV records, the district court never asked if the prosecution had a witness who could reliably answer these questions.

The rules of evidence favor admissibility, so we afford evidence its "maximum probative value . . . and the minimum unfair prejudice to be reasonably expected." *People v. Hood*, 2024 COA 27, ¶ 19 (citation omitted).

¶ 53 We review nonconstitutional errors for harmless error and reverse "only if the error affects the substantial rights of the parties" such that "the error 'substantially influenced the verdict or affected the fairness of the trial.'" *Hagos v. People*, 2012 CO 63, ¶ 12 (citation omitted).

### 3. Analysis

¶ 54 Tapia argues that the court should have excluded the 1982 Record because it was (1) inadmissible hearsay that did not fall under the public record or ancient document exceptions in CRE 803(8) and 803(16); (2) impermissible double hearsay; and (3) unduly prejudicial under CRE 403. For several reasons, we hold that the 1982 Record should have been excluded under CRE 403 because its probative value was substantially outweighed by the risk of prejudice and misleading the jury. Therefore, we need not reach the hearsay arguments.

¶ 55    First, inconsistencies within the 1982 Record and between the 1982 Record and the DMV Record suggest that one or both documents contain inaccuracies.[5]  For example, as Colvin testified, the dates in the 1982 Record are likely incorrect because they show that Tapia committed the offense, plead not guilty, and was found guilty on September 24, 1982.  Conversely, the DMV Record lists an offense date of September 23, 1982, and a conviction date of July 1, 1983.  Next, the 1982 Record lists a careless driving charge, a careless driving conviction, and a DUI or DWAI charge with a conviction for a "lesser charge."[6]  The DMV Record shows a DWAI charge, an eight-point penalty suggesting a DWAI conviction, a DUI charge with no points, and no mention of careless driving.

¶ 56    These records are factually and legally inconsistent.  For example, in 1982, a careless driving conviction carried a four-point penalty on a person's driver's license.  *See* § 42-2-123(5)(e), C.R.S.

---

[5] This undermines the State's suggestion that the DMV Record corroborates the 1982 Record, making it more reliable.
[6] As discussed in detail below, while the charge description says "driving under influence – alcohol/drugs," the 1982 Record cites only the DWAI statute, not the DUI statute.

1982. Yet, the DMV Record inexplicably omitted the 1982 Record's careless driving conviction.

¶ 57    Second, concerning the DMV Record, neither the jury nor the court heard evidence about how the DMV obtains court records, what it counts as convictions, or which offenses and convictions it lists in its records. In fact, as the defense argued, a DUI defendant's failure to appear in court is considered a conviction for purposes of assessing points on a driver's license. *See* § 42-2-127(6)(b), C.R.S. 2024.

¶ 58    Similarly, neither the jury nor the court heard evidence about how paper records are transferred to ICON, the source of the records, who copied them, what information might have been omitted, or what the term "converted description" in the 1982 Record meant. Additionally, no evidence established whether Tapia's conviction for a "lesser charge" meant a lesser included offense or a lesser *nonincluded* offense. There was also no explanation about whether the statute cited with the alleged DWAI conviction was the statute under which Tapia was *convicted* or *charged*. This raises perhaps the most concerning aspect of the 1982 Record, reproduced below with pertinent information

highlighted in red boxes:



### Does the 1982 Record Show a DUI or DWAI Charge?

¶ 59    As shown, beneath the words "statute number" and "charge description," the 1982 Record lists the statute for Count 2 as section 42-4-1202(1)(b), C.R.S. 1982, the DWAI statute in 1982.  At the time, the DUI statute was section 42-4-1202(1)(a), C.R.S. 1982.  Therefore, although the charge is listed as driving under the influence of alcohol/drugs, the statutory citation suggests that Tapia was *charged* with DWAI but convicted of a *lesser* charge.  So it is at least possible that the DUI language was a generic "catch-all" term for alcohol and drug related driving offenses and that the lesser charge was careless driving.

¶ 60    While the prosecution argued that the 1982 Record showed Tapia was *charged* with DUI and *convicted* of DWAI under section

27

42-4-1202(1)(b), C.R.S 1982, no evidence explained why the 1982 Record would not cite the applicable DUI statute or why it would list the *charged* offense's description next to the *convicted* offense's statute. Therefore, the prosecution's argument that "Glty Lesser Crg" referred to a DWAI conviction was not clearly established. This ambiguity — which the district court itself had earlier recognized — and the other referenced discrepancies decreased the 1982 Record's probative value, while increasing its risk of misleading the jury. *See* CRE 403.

¶ 61    We agree with the State that it is the jury's role to determine the relative weight of evidence in light of possible errors or ambiguities. *See People v. Poe*, 2012 COA 166, ¶ 17. However, evidence must be excluded if its probative value is "outweighed by the unfair prejudice resulting from unreliability." *United States v. Thevis*, 665 F.2d 616, 633 n.17 (5th Cir. 1982); *see also Taylor v. Illinois*, 484 U.S. 400, 414-15 (1988) ("The integrity of the adversary process . . . depends both on the presentation of reliable evidence and the rejection of unreliable evidence . . . ."). Similarly, evidence must be excluded if there is a substantial risk that the jury will give it undue and prejudicial weight. *People v. Marks*, 2015 COA 173,

¶ 39. Here, we conclude that the risks of prejudice and confusion were too substantial for the jury to fairly consider the 1982 Record's probative value. *See* CRE 403.

¶ 62    First, the jury heard from Colvin that the 1982 Record was "a record of conviction," that Tapia had been charged with "driving under the influence of alcohol and drugs," and that "DWAI is a *lesser charge*" for DUI. (Emphasis added.) Colvin testified that she had worked in law enforcement for more than a decade and that her role at the District Attorney's Office involved "confirming that someone has prior convictions." This testimony could have led the jury to give her testimony substantial weight, even when she could not explain the discrepancies within and between the two records. *See Marks*, ¶ 39; *Nuccio v. Shell Pipeline Co., LP*, 506 F. Supp. 3d 382, 390 (E.D. La. 2020) (explaining that "definitive statements" coupled with "unexplained factual inaccuracies" may create undue prejudice).

¶ 63    The prosecution also used the jury's recently obtained knowledge about lesser included offenses from the first phase of the trial to argue that the 1982 Record's reference to Tapia's conviction for a lesser charge could only mean a DWAI conviction. This gave

the jury a plausible and appealing reason to disregard the 1982 Record's ambiguities and inconsistencies. Together, Colvin's testimony, the prosecution's argument, the ambiguity surrounding the lesser charge conviction, and the DMV Record's indication that Tapia was charged with DUI and convicted of DWAI created a substantial risk of misleading the jury. *See* CRE 403.

¶ 64 Finally, the jury had just convicted Tapia of DWAI and was deciding whether his prior alcohol-related offenses elevated that conviction to a felony. Under these circumstances, it is possible that a jury would accept the 1982 Record as evidence of a valid conviction for improper reasons. *See Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002) (describing unfair prejudice as "an undue tendency to suggest a decision on an improper basis," often "an emotional one") (citation omitted); *see also United States v. Castillo*, 140 F.3d 874, 882 (10th Cir. 1998) ("[E]vidence of the defendant's prior criminal acts . . . creates 'the risk that a jury will convict for crimes other than those charged — or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'") (citation omitted).

¶ 65    We do not suggest that all evidence of a defendant's prior alcohol-related convictions in felony DUI or DWAI trials is always prejudicial. *Cf. Kembel*, ¶ 54 (describing such evidence as relevant, admissible, and "not unfairly prejudicial"). But evidence of a prior conviction that is so unreliable as to be unfairly prejudicial should be excluded under CRE 403. *See Thevis*, 665 F.2d at 633 n.17.

¶ 66    Here, the source and creation of the 1982 Record were unexplained, the dates were obviously inaccurate, the DMV Record and the 1982 Record contained discrepancies, it was unclear whether Tapia had been charged with a DUI or DWAI, and the meaning of Tapia's conviction for a "lesser charge" was ambiguous, especially when the cited statute did not support the prosecution's argument about the crime at issue. This reduced the 1982 Record's probative value and created a significant risk of confusion. *See* CRE 403. Moreover, given Tapia's prior convictions and the clear implication from Colvin's testimony that the 1982 Record and the DMV Record corroborated a DWAI conviction, the risk that the jury would improperly credit the 1982 Record outweighed its probative value. *See Masters*, 58 P.3d at 1001; CRE 403.

¶ 67    Therefore, the district court erred by admitting the unreliable 1982 Record.  Because of the weaknesses in the DMV Record detailed above, we also conclude that the error was not harmless because Tapia's felony DWAI conviction could not stand without the 1982 Record and the evidence it purportedly provided.  *See Hagos*, ¶ 12; § 42-4-1301(1)(b).

### III.    Disposition

¶ 68    The judgment of conviction is affirmed in part and reversed in part as it relates to the felony portion of Tapia's DWAI conviction. Therefore, we remand for the district court to correct the mittimus to reflect a non-felony DWAI conviction.

JUDGE GOMEZ and JUDGE LUM concur.