22CA1822 Peo v Garcia 05-08-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1822
City and County of Denver District Court No. 19CR20013
Honorable Martin F. Egelhoff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anatolio Garcia,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Rachel C. Funez, Alternate Defense Counsel, Glenwood Springs, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Anatolio Garcia, appeals his conviction and sentence for first degree extreme indifference assault and vehicular homicide.  We disagree and affirm.

## I.     Background

¶ 2     In May 2019, just after 2 p.m., the van Garcia was driving hit a car.  Garcia and his passengers picked up some debris from that crash before getting back in the van and speeding away.  Witnesses watched as Garcia sped down a residential street and eventually hit another car, killing the driver.  The second collision was so violent that Garcia's van struck a house and injured an occupant of that home.  A passenger inside the van, S.P., suffered a spinal fracture.

¶ 3     Garcia was pulled from the driver's seat and taken to the hospital by ambulance.  He told a police officer that he was the driver of the van.  The officer smelled alcohol on Garcia's breath and noticed that his eyes were bloodshot and watery, and that he was slurring his speech.  Garcia's blood was drawn three times between approximately 6 p.m. and 8 p.m., and his blood alcohol content measured .243, .225, and .205 — two and a half to three times the legal limit to operate a motor vehicle.  Garcia also tested positive for

THC, the psychoactive ingredient in marijuana. Garcia had four prior DUI convictions between 1992 and 2003.

¶ 4 Garcia was arrested and charged with thirteen different crimes, including first degree murder, vehicular homicide, and first degree extreme indifference assault.

¶ 5 For most of this case, Garcia maintained that he wasn't driving the van during the second accident — despite being pulled from the driver's seat by emergency medical services and reporting he was the driver. Garcia was found incompetent to stand trial in August 2020 and found competent in January 2021. He was initially found to be incompetent because, among other reasons, his account of events "contained several bizarre elements." When he was restored to competency in January 2021, the psychiatrist didn't find a mental or developmental disorder, instead postulating that Garcia's continued "fantastical" version of events might have resulted from an alcoholic "blackout" that he backfilled with a story created to help him cope "with a potentially life-changing event." His original counsel moved to withdraw in March 2021, and the court appointed alternate defense counsel (ADC) — whom we will refer to as plea counsel — to represent him.

¶ 6     In October 2021, Garcia entered a guilty plea to first degree extreme indifference assault and vehicular homicide in exchange for dismissal of the eleven other charges. The court gave Garcia a very thorough advisement concerning the rights he was relinquishing by pleading guilty, including the right to defend against any of the charges and the right to a trial. Garcia repeatedly affirmed his desire to plead guilty during this advisement from the court.

¶ 7     The matter was set over for sentencing.

¶ 8     But three months after pleading guilty and before sentencing, Garcia requested to withdraw his guilty plea, claiming that his plea counsel had pressured him into pleading guilty to buy them time to investigate certain leads. Garcia claimed that plea counsel promised that he could withdraw his plea if they discovered exculpatory information, but he says they never conducted the promised investigation and didn't provide him with the discovery in his case until after he had pleaded guilty. Garcia claimed that once he was provided with the discovery and had the opportunity to review it, he was able to identify several potentially exculpatory leads. Garcia requested the court allow him to withdraw his guilty plea so that he could investigate these leads. Concurrent with

Garcia's motion to withdraw his plea, plea counsel filed a motion to withdraw.

¶ 9 The court granted plea counsel's motion to withdraw and appointed new ADC — whom we will refer to as final counsel — to represent Garcia in moving to withdraw his guilty plea and at sentencing if the motion to withdraw his plea was unsuccessful.

¶ 10 Final counsel requested that Garcia be evaluated a third time, and he was found competent again in July 2022. After final counsel presented Garcia's motion to withdraw his guilty plea orally and the prosecution responded, the court denied the motion. The court then imposed the maximum sentence for both convictions — thirty-two years for the first degree extreme indifference assault conviction and twelve years for the vehicular homicide conviction — and ordered that Garcia serve the sentences consecutively.

## II.   Issues on Appeal

¶ 11 Garcia raises four issues on appeal. Garcia contends that the court erred by (1) appointing final counsel to investigate whether there were grounds to file a motion to withdraw his guilty plea; (2) denying his motion to withdraw his guilty plea; (3) imposing the maximum sentence allowed by statute; and (4) imposing a

4

disproportionate sentence in violation of the Eighth Amendment and the Colorado Constitution on the first degree extreme indifference assault conviction. We address and reject each contention in turn below.

## A. Conflict of Interest

¶ 12     Garcia argues that the trial court created a conflict of interest by appointing final counsel to "investigate whether or not there are grounds to withdraw the guilty plea." He argues the court's language when appointing final counsel created a conflict of interest between final counsel's responsibility to represent Garcia and her mandate to investigate the merits of his motion to withdraw his plea. We aren't persuaded.

### 1. Standard of Review

¶ 13     Though we would normally review a court's rulings on appointment of counsel for an abuse of discretion, because Garcia alleges the court's order appointing counsel created a conflict of interest, we review his claim de novo. *Ronquillo v. People*, 2017 CO 99, ¶ 13.

## 2. Additional Facts

¶ 14    After granting plea counsel's motion to withdraw, the court appointed final counsel:

> I'll appoint ADC . . . to investigate whether or not there are grounds to withdraw the guilty plea. If there are, there needs to be a motion filed and we'll have a hearing on that motion. . . . If that motion is denied, he or she will proceed at Garcia's time for sentencing. If it's granted, he has a lawyer.

¶ 15    About a month later, final counsel appeared on Garcia's behalf at a hearing. The court commented on its previous order appointing final counsel: "So the Court appointed ADC to investigate whether or not there's grounds to file a Motion to Withdraw Mr. Garcia's guilty pleas."

¶ 16    And after final counsel requested a continuance, the court laid out a roadmap for the case moving forward:

> So we'll need to be prepared to — if there's grounds to . . . withdraw the guilty plea, you need to file a written motion with those grounds so the DA's on notice. And if there's a motion filed, we'll have a hearing and determine whether there's basis or not. And depending on the result of that, we'll either proceed to sentencing or not.

¶ 17    In March, at another hearing, final counsel cited attorney-client privilege when limiting her discussion about what issues she was investigating for Garcia.  Shortly after that, the court clarified the scope of her appointment:

> THE COURT: So, Counsel, when we appointed you on this case, just remind me, would I be correct in presuming that you obviously are appointed to investigate and present any request on behalf of Mr. Garcia on his guilty plea?  Presuming, just for the sake of argument, that motion is denied, then you would be then the counsel — or would it be (indiscernible) appointment to be the counsel to represent him during sentencing?
>
> [ADC]: I would assume so.  I would likely reach out to ADC, but I would assume that.  I would do both for — unless Mr. Garcia had any objection just for kind of clarity's sake that now I'm familiar with the case and with Mr. Garcia. . . .
>
> THE COURT: And I guess if the Court made that an order, that would solve that problem, right?
>
> [ADC]: I would agree, yeah.
>
> THE COURT: So here again, I'm not asking you to divulge any confidential information, but let's say I gave you a continuance — and I understand what you're doing, and I — you know, everyone's frustrated about the pace of the case and what's happened here.  And I guess what I'm trying to do is get the issues before the Court resolved and so we can

actually have a resolution that stands up one way or the other.

And so let's just say that we give you the time that you need or maybe a little less, at that point in time, would you be in a position to both present whatever motion you're going to present, and if that motion is indeed denied, just for the sake of argument, then be in a position then to proceed to sentencing?

¶ 18    Final counsel replied that she needed to confer with Mr. Garcia. After they spoke off the record, final counsel confirmed that, if his motion to withdraw his guilty plea was denied, Mr. Garcia wanted to proceed with her as his attorney through sentencing and that she felt she would be ready to represent him at sentencing.

¶ 19    Finally, the court warned Garcia:

And so I want to make very clear to you, Mr. Garcia, that I've appointed one more lawyer for you to proceed with this motion and proceed to sentencing. And if conflicts arise with respect to this lawyer, you may very well be to the point where you have forfeited your right to counsel and you'll proceed without counsel. And I'm not talking about a waiver; I'm talking about a forfeiture of your right to counsel.

### 3.    Analysis

¶ 20    Garcia argues that the court created a conflict of interest that denied him effective assistance of counsel when it appointed final

8

counsel to investigate whether there were grounds for Garcia to withdraw his guilty plea. Garcia argues that by imposing on final counsel the obligation to investigate whether there were grounds for Garcia's motion to withdraw, the court split counsel's loyalty between investigating on behalf of the court and representing Mr. Garcia's interests.

¶ 21   Garcia relies on *People v. Breaman*, 939 P.2d 1348 (Colo. 1997), to support his argument. In *Breaman*, the court appointed an attorney for Breaman "to review [Breaman's] submissions, consult with [Breaman,] and make such further investigations as may be appropriate to determine if a meritorious issue exists." *Id.* at 1350. The attorney filed a status report detailing how he had reviewed the files and transcripts from the case, discussed the case with the arresting officer and the attorney who had previously represented Breaman, and researched the applicable law. Our supreme court held that, while a court may remind an attorney of their duty not to pursue meritless claims, the *Breaman* court's language impermissibly limited the scope of the attorney's appointment to be the "court's fact-finder." *Id.* at 1351-52. The court supported its decision with a couple of key observations: (1)

9

the attorney's status report didn't indicate that he had spoken with Breaman at all, and (2) the attorney "reviewed the claims and reported directly to the court." *Id.* at 1352.

¶ 22     But the facts in these cases are distinguishable. First, the court's language when it appointed final counsel was broader than that of the district court in *Breaman*. For example, the trial court initially described an arrangement where final counsel would present a motion to withdraw the guilty plea, and if it was denied final counsel "will proceed at Garcia's time for sentencing. If it's granted, he has a lawyer." This describes the full scope of a normal attorney-client relationship during a criminal trial — not a limited role as the court's investigator. And the court clarified its language, ensuring that there could be no question that final counsel wasn't the court's fact finder, stating that "if there's a motion filed, we'll have a hearing and determine whether there's basis or not. And depending on the result of that, we'll either proceed to sentencing or not."

¶ 23     The court clearly reserved the responsibility to determine if final counsel had established a basis for withdrawing the plea at the hearing — and didn't place that responsibility on final counsel as

the court did in *Breaman.* 939 P.2d at 1350. Moreover, the court warned Garcia that if final counsel withdrew due to yet another conflict, it would constitute a forfeiture of Garcia's right to counsel. By framing what legal right Garcia stood to lose if final counsel were to withdraw due to a conflict, the court made it clear that final counsel was to act as Garcia's legal counsel, not the court's fact finder.

¶ 24 Second, final counsel did confer with Garcia, including obtaining Garcia's explicit consent to represent him at the sentencing phase. This is in contrast to the attorney in *Breaman,* who didn't speak with Breaman at all. *Id.* at 1351. And final counsel presented Garcia's motion to withdraw his guilty plea, albeit orally, in contrast to the attorney in *Breaman* who simply filed a status report detailing the attorney's findings. *Id.* at 1350.

¶ 25 Moreover, final counsel clearly understood that she was being appointed as Garcia's counsel, and not as the court's fact finder, because she upheld her obligations to Garcia when she protected the attorney-client privilege at a hearing, and when she made a motion requesting Garcia's fitness be evaluated again — for the third time. *See* Colo. RPC 1.6.

¶ 26    Because the court didn't limit the scope of final counsel's representation of Garcia, and because final counsel acted as Garcia's counsel and not as a fact finder for the court, we discern no error in the court's order appointing Garcia final counsel.

## B.    The Motion to Withdraw the Plea

¶ 27    Next, Garcia contends that the trial court erred by denying his motion to withdraw his guilty plea because his motion was timely, the prosecution wouldn't have been prejudiced if the court had granted the motion, and he had a fair and just reason for withdrawing his plea.  We disagree.

### 1.    Standard of Review

¶ 28    A defendant must demonstrate a fair and just reason in order to withdraw a guilty plea.  *People v. Chippewa*, 751 P.2d 607, 609 (Colo. 1988).  We review a denial of a motion to withdraw a guilty plea for an abuse of discretion.  *Id.*  A trial court abuses its discretion if its ruling is manifestly arbitrary or unreasonable, or if it misapplies the law.  *People v. Burlingame*, 2019 COA 17, ¶ 10.

### 2.    Additional Facts

¶ 29    Final counsel argued that Garcia didn't receive his discovery until after he entered his guilty plea, and that once he received

discovery in his case, Garcia identified several "areas of reasonable doubts." When the court asked final counsel to clarify, she responded:

> Areas of reasonable doubt that Mr. Garcia has identified is essentially a witness that saw two individuals running from the scene shortly after the accident.
>
> Mr. Garcia has also identified another witness that stated the wrong color of construction vest, that of the person that was driving the car.
>
> Mr. Garcia also identified a witness that stated that the victim in this case was driving about [seventy] to [eighty] miles per hour very quickly down the road. . . .
>
> And, Your Honor, Mr. Garcia also identified that some of the officer's bodycam footage does not show a complete interaction of that day, and only does show Mr. Garcia once he is in the . . . the ambulance, excuse me, not prior to that.

¶ 30     The trial court rejected Garcia's claim that he didn't receive discovery until after he pleaded guilty as not credible. The trial court also referenced its extensive advisement to Garcia regarding the implications of pleading guilty — and specifically the part where Garcia stated he was satisfied with his counsel at the time. The court concluded that, even if Garcia had intended to plead guilty

13

and withdraw that plea later, that wasn't "a good and just reason now to allow him to withdraw his guilty plea." The court also rejected Garcia's claim that he had determined areas of doubt in the discovery because Garcia was found behind the wheel of the van after it had hit the house, was transported to the hospital via ambulance, and admitted on camera that he was driving the van.

### 3.    Analysis

¶ 31    Garcia argues that he had two fair and just reasons to withdraw his guilty plea. First, he argues that he only entered the guilty plea because his plea counsel promised he would investigate certain aspects of the case and that if these investigations produced any exculpatory evidence Garcia could then withdraw his guilty plea. But his argument fails for two reasons.

¶ 32    First, the idea that Garcia could expect to plead guilty as a method of buying more time to gather evidence contradicts the terms of the plea agreement. Remember that prior to entering his plea Garcia was explicitly advised by the court that by pleading guilty he was abandoning any defenses he might have to the charges — not buying time to discover such defenses. Because

14

Garcia's argument is contrary to the definition and purpose of a plea bargain, we reject it.

¶ 33     Second, given the overwhelming nature of the evidence against him, there was no real possibility that plea counsel would discover any exculpatory evidence. Consider that Garcia was pulled from the driver's seat of the van by emergency medical services, and he told police that he was the driver of the van on camera. It would have served no purpose, for example, for plea counsel to have investigated the GPS data for Garcia's phone as he requested, since all that would prove is that his phone was somewhere other than the scene of the crash — not that Garcia wasn't driving the van.

¶ 34     Garcia next argues that, once he received discovery, he found several "areas of doubt" that provided him with a defense to the charges. But these "areas of doubt" are either irrelevant or insufficient to cast reasonable doubt on the evidence that he was driving the van. For example, at the hearing Garcia alleged that witnesses saw two people running from the scene of the accident, that a witness testified that Garcia was wearing the wrong color safety vest, and that the officer's body camera footage was incomplete. Garcia didn't identify where in the record some of these

instances occurred or, more importantly, how they would prove he was innocent even if he could prove them.

¶ 35    Because Garcia didn't have a fair and just reason to withdraw his guilty plea, we discern no error in the trial court's denial of his motion.

## C.    The Maximum Consecutive Sentence

¶ 36    Garcia contends that the court erred when it sentenced him to serve the maximum number of years for both charges consecutively. But we decline to address his argument because Garcia doesn't have the right to appeal his sentence on these grounds.  § 18-1-409(1), C.R.S. 2024 ("[I]f the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence."); *People v. Scofield*, 74 P.3d 385, 387 (Colo. App. 2002) (holding that section 18-1-409(1) bars review of sentence imposed in the aggravated range where, as part of a plea agreement, "the parties expressly agreed that defendant would be sentenced within the aggravated sentencing range").

¶ 37    At the sentencing hearing, the trial court confirmed the possible sentencing ranges for both of his charges, including

possible fines, and asked Garcia if he understood those penalties. Garcia replied, "Yes, I do, Your Honor." The court confirmed his desire to plead guilty just a moment later:

> THE COURT: And that was my next question was in light of the things we've talked about this morning, do you feel that you've understood what we've talked about this morning?
>
> THE DEFENDANT: I most certainly have, Your Honor.
>
> THE COURT: Okay. And in light of that discussion, you still want to persist in this plea?
>
> THE DEFENDANT: Yes, I do.

¶ 38 Relying on *People v. O'Dell*, 53 P.3d 655, 657 (Colo. App. 2001), Garcia contends that because the plea agreement "left sentencing open [to the court] and contained no stipulation as to the sentence to be imposed," section 18-1-409(1) doesn't bar him from challenging the propriety of the sentence on appeal. We disagree.

¶ 39 In *O'Dell*, the division concluded that appellate review of a sentence wasn't barred because there the defendant was merely advised of the sentencing range for the charge he pleaded to and there was "no indication in the record that [the defendant's] plea

17

agreement included any type of agreed sentencing range or cap."
*Id.* That's not the case here. Garcia's plea agreement explicitly provided that the court would impose a sentence in the presumptive range of four to twelve years on the vehicular homicide conviction and in the aggravated range of ten to thirty-two years on the first degree extreme indifference assault conviction, and that the court could impose sentence consecutively. Such a provision in a plea agreement is adequate to bar appellate review under section 18-1-409(1). *See People v. Dobler*, 2015 COA 25, ¶ 30 ("Because the sentence imposed was 'within a range agreed upon by the parties pursuant to a plea agreement,' defendant is precluded from challenging the propriety of his sentence on appeal." (first citing § 18-1-409(1); and then citing *Scofield*, 74 P.3d at 387)); *Scofield*, 74 P.3d at 387 (declining to apply *O'Dell* where the parties' entered a plea agreement providing that "defendant would be sentenced within the aggravated sentencing range for" the offense to which he was pleading guilty). This is true even when the sentencing range agreed to by the parties doesn't "confer a sentencing benefit or concession on the defendant." *Scofield*, 74 P.3d at 386-87.

¶ 40 Accordingly, since the trial court's sentence was within the range contemplated by Garcia's plea agreement and explicitly agreed to by Garcia, we decline to consider his appeal of the sentence on these grounds.[1]

## D. Proportionality

¶ 41 Last, Garcia contends that the court's thirty-two-year sentence for his first degree extreme indifference assault conviction is disproportionate in violation of the Eighth Amendment to the United States Constitution and article II of the Colorado Constitution. We disagree.

### 1. Standard of Review

¶ 42 We review de novo whether a sentence is "grossly disproportionate in violation of the Eighth Amendment to the U.S. Constitution and article II, section 20 of the Colorado Constitution."

---

[1] Even if we were to review Garcia's sentence for an abuse of discretion, the trial court's decision was within the sentencing range contemplated by the legislature and the court supported its decision with ample and adequate findings; thus we discern no abuse of discretion. *See People v. Herrera*, 2014 COA 20, ¶ 16 ("We review a trial court's sentencing decision for an abuse of discretion. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair . . . .") (citations omitted); *People v. Voth*, 2013 CO 61, ¶ 15 ("A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law.").

*Wells-Yates v. People*, 2019 CO 90M, ¶ 35. "It is 'exceedingly rare' for a sentence to be deemed so extreme that it is grossly disproportionate to the crime." *Id.* at ¶ 5 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).

¶ 43 Relying on *People v. Walker*, 2022 COA 15, the People contend that because Garcia never raised the issue of proportionality at trial, we should review the claim for plain error. Garcia contends we should decline to follow *Walker* because, he argues, the division was incorrect in deciding that plain error applies to unpreserved proportionality claims. But because we discern no error, we need not resolve this conflict regarding the appropriate standard of review. *See People v. Carter*, 2015 COA 24M-2, ¶ 29 (noting that when a reviewing court discerns no error, it "need not decide whether the plain error standard applies").

¶ 44 In the first step of a proportionality review, the court "should consider (1) the gravity or seriousness of the offense and (2) the harshness of the penalty." *Wells-Yates*, ¶ 7. If that consideration gives rise to an inference of gross disproportionality, then the court moves to the second step — comparing "the challenged sentence to

20

sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions" — but if there is no inference of disproportionality then the sentence must be upheld. *Id.* Whether a sentence is parole eligible is relevant to its harshness since "parole can reduce the actual period of confinement and render the penalty less harsh." *Id.* at ¶ 14.

## 2. Additional Facts

¶ 45 At the sentencing hearing, the trial court made findings before it sentenced Garcia.

> This — this is a very serious and aggravated case for a lot of reasons, much of which has been discussed by the Prosecution, but I'll highlight a few things.
>
> This is a case where the driving behavior was extraordinarily dangerous. . . . It sounds like it was residential streets, during school hours, school children present. I watched the videos as part of the litigation in terms of what they saw and how they were endangered. It was — the rate of the car, the speed was obviously very high going through traffic control devices and stop signs and such. That alone is a very serious and scary and dangerous behavior aggravated by the fact that Mr. Garcia, you were very, very drunk at the time.
>
> . . . .
>
> There's also this history, Mr. Garcia, with respect to the four prior DUIs. And that's, in

my view, have been — and one way to look at a pattern a long time ago. Another way to look at is you've got four chances to address these behaviors. And I certainly know back when you got those DUIs that there was requirements for education, treatment, and such. And the fact that you had this level of intoxication and these behaviors so many years afterwards tells me it was a lifelong problem. . . .

So in terms — the purposes of sentencing is obviously, rehabilitation is a very important function. Mr. Garcia has had that opportunity with the prior DUIs. And we've got this terrible circumstance. The Court needs to consider a punishment for an individual and this kind of behavior warrants a substantial punishment.

The Court also needs to consider the community at large. And the community at large needs to understand two things.

One, that this sort of behavior is absolutely unacceptable. And, two, there's consequences for that behavior if it happens. So there's the necessity of deterrence and community safety as well.

¶ 46    The court imposed a sentence that included the possibility of parole.

### 3.    Analysis

¶ 47    A person commits assault in the first degree if "[u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave

22

risk of death to another person, and thereby causes serious bodily injury to any person." § 18-3-202(1)(c), C.R.S. 2024.

¶ 48     Garcia argues that his crime of first degree extreme indifference assault wasn't grave or serious because (1) Garcia didn't mean to hurt anyone; (2) the accident was the result of Garcia's untreated alcoholism; and (3) the extent of S.P.'s injuries aren't known, S.P. was a willing passenger despite knowing that Garcia was drunk, and S.P. didn't participate in the sentencing hearing.  We disagree for three reasons.

¶ 49     First, regardless of Garcia's intention to hurt anyone, he pleaded guilty to "knowingly engaging in conduct so dangerous" that it created a "grave risk of death" to another person.  Garcia knew he was speeding through residential streets, and by doing so he was risking the lives of others.  He didn't have to *intend* to hurt or kill another person in order to create the grave risk that someone may be killed.  Because Garcia's doesn't dispute that his culpability was sufficient under statute to be guilty of first degree extreme indifference assault, we reject his argument.

¶ 50     Second, while the accident might have been the result of Garcia's alcoholism, as the court pointed out, Garcia's alcoholism

certainly wasn't untreated. Garcia has three previous DUI convictions, one in 1993, one in 2001, and one in 2003. The court noted that Garcia would have been required to complete some education and treatment requirements. Those previous DUIs should have served as learning and treatment opportunities for Garcia to address his alcoholism. Because Garcia was given three chances previously to obtain treatment for his alcoholism, his argument that the crash was the result of untreated alcoholism isn't borne out by the record and we reject it.

¶ 51 Third, Garcia's arguments relating to his injured passenger, S.P., confuse the results of the crash with the nature of the behavior that led to the crash. Whether S.P.'s injury was serious, whether he was a willing passenger, and whether or not he wanted to participate in the sentencing hearing are questions largely secondary to whether Garcia's behavior was grave and serious.

### a. The Crime Was Grave and Serious

¶ 52 The court's findings show that Garcia's behavior was grave and serious. The court noted that Garcia sped through residential neighborhoods and school zones during school hours, disregarded traffic control devices and stop signs, and nearly hit several people.

And all of this behavior was after the initial crash, which Garcia fled. The People also note that Garcia was travelling so fast that half of the van was lodged inside of the house he collided with, and the occupant of the home had minor injuries. And while we don't know the severity of S.P.'s injury, we do know that it was a substantial injury — a cervical spine fracture. And Garcia was very, very drunk. Four hours after the accident his blood alcohol content was .243 — over three times the legal limit.

¶ 53 All of these findings support the conclusion that Garcia's conduct was grave and serious because, consistent with section 18-3-202(1)(c), they created the undeniable risk that someone could be killed.

### b. The Sentence Isn't Disproportionate

¶ 54 Having determined that Garcia committed a grave and serious crime,[2] we must determine if the sentence was so harsh as to give rise to an inference of disproportionality. We determine that it doesn't, for two reasons. First, the sentence was within the range of

---

[2] Because Garcia's crime of first degree extreme indifference assault is grave and serious as committed, we need not address whether that charge is grave and serious per se.

sentences prescribed by the legislature, which are due great deference in proportionality reviews. *See People v. Kennedy*, 2023 COA 83M, ¶ 15 ("[I]f a crime is grave or serious, and so long as the penalty is within the statutory range, the sentence is nearly impervious to attack" on an Eighth Amendment proportionality review. (citing *Wells-Yates*, ¶ 62)) (*cert. granted* Aug. 5, 2024).

¶ 55 Second, the sentence is parole eligible — which means that Garcia has the opportunity to be released before completing the full thirty-two-year sentence. *See Wells-Yates*, ¶ 14. Additionally, the trial court made it clear that the sentence was calculated to deter future, similar behavior and thereby protect the community.

¶ 56 We discern no error in the trial court's decision to sentence Garcia to the maximum sentence allowed by statute for his conviction for first degree extreme indifference assault.

### III. Disposition

¶ 57 The judgment is affirmed.

JUDGE KUHN and JUDGE SCHUTZ concur.